JOHN R. IRVINE, Appellant, *vs.* WM. R. MARSHALL and THOS. BARTON, Respondents.

### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

I. and B. were in dispute about a portion of the public lands, then about to be offered for sale under proclamation of the President, each claiming the right to purchase the whole of the land in dispute, to the exclusion of the other, and of all others, by virtue of alleged improvements,— but being unable to adjust their differences before said sale, they entered into a written contract whereby it was agreed that each should furnish to M. one-half the money necessary to make the purchase, and that M. should bid the land off, in his own name, in trust for them, and afterwards should convey the same agreeably to the decision or direction of five disinterested citizens, to be chosen as therein provided for. *Held,* in an action by I. to compel M. to convey to him an undivided half of the land purchased by him under this arrangement, that the arbitrators provided for were authorized to direct the whole or any part of said land to be conveyed to either party according to the merits of their claims respectively; that they were not to be selected for the mere purpose of dividing the land equally between the parties to said agreement; and that the Plaintiff could not rightfully demand of M. a conveyance for any part of the land, unless said arbitrators so directed.

*Held also,* aside from the statute abolishing resulting trusts, that the presumption that a party who furnishes the consideration for the purchase of real estate, intends the purchase to be for his own benefit, may be rebutted by evidence showing that he did not so intend; and that in this instance the terms of the instrument itself, and the circumstances attending the making of it, repel the idea that the parties intended the land to be purchased for the benefit of each in proportion to the amount of the purchase money furnished by him.

Where a party after laying the proper predicate, offers to prove a particular contract by an alleged copy, which is ruled out under objections, and he then produces other evidence from which it is found that such contract was in fact made, he cannot avail himself of any error which the Court may have committed in rejecting the alleged copy, or any other evidence offered merely to prove the contract which is found to exist.

Points and Authorities of Appellant.

I.—The rules relating to the introduction of secondary, are the same as those regulating primary evidence, and the best evidence of which the matter is susceptible, must be produced ; hence a copy is the best evidence of the contents of a lost instrument, and the referee erred in excluding the copy of the agreement between Irvine and Barton. 9 *Peters*, 663, (11 *Cur.*, 521); 4 *Curtis*, 428, 715; 20 *Curtis U. S.*, 167, (14 *How.*, 263); 6 *Ga.*, 188; 5 *Ala.*, 435; 1 *Peters*, 591; 8 *Ga.*, 468; 9 *Geo.*, 471; 10 *B. Mon.*, 115; 5 *Gill.*, 113; 12 *U. S. Dig.*, *p.* 274; sec. 171, 179, 173, 180 to 185, 191, *an office copy admissible*; 4 *U. S. Dig.*, *p.* 697; sec. 911, 917; 8 *do*, *p.* 166, sec. 79; 9 *do*, *p.* 207, sec. 133; 10 *do*, *p.* 201, sec. 147, 157-58-59; 11 *do*, *p.* 202, secs. 112-13-14; 13 *do*, *p.* 300, sec. 199; 14 *do*, *p.* 272, sec. 182; 6 *Binn.*, 228, 59; 2 *A. K. Marsh*, 366; 3 *A. K. Marsh*, 545; 1 *Stewart*, 136; 14 *Vt.*, 311; 4 *Blackf.*, 243, *and cases cited*; 6 *Cow.*, 377, 381-82; 9 *Cow.*, 220; 11 *Barb.*, 215; 3 *Phil. Ev.*, *p.* 1233–34, *notes* 867, 868; *J. J. Marsh*, 316.

II.—Where the original agreement or other written instrument is not presumptively in the hands of the party who undertakes to account for its absence or show its loss, very slight proof is sufficient to lay the foundation for the introduction of secondary evidence of its contents. *See cases above cited.*

III.— The referee erred in excluding the question propounded to Edmund Rice by Plaintiff's counsel, on folio 17 of case, as it was both material and relevant.

IV.—That the case made by the admissions in the pleadings and the proof introduced by Plaintiff's counsel, shows not only an unexecuted, but a violated trust, of which the Appellant is the *cestui que trust*, and the Defendants the trustees; and that the former is entitled to the relief demanded, viz : a conveyance of the undivided half part of the land described in the complaint. 1 *Lead. Cases in Eq.*, 202-3, *and cases there cited.*

V.—That the true and only construction of the agreement

between Irvine and Barton of September 9, 1854, is, that the five citizens therein referred to, were to make partition of the land between the parties, the payment of the money having fixed the rights of the parties,—because to give any different construction to it, would not only be contrary to the true intent and meaning of the language, but would be to hold the agreement to be in direct conflict with the statute, and therefore, to that extent, inoperative ; whereas the Courts are bound to give effect to every provision of the contract, if the language will at all warrant it.

VI.—The case made by the Plaintiff as it stands, independent of the errors in the exclusion of the copy of the agreement, entitled the Plaintiff to a judgment for an undivided half of the land, and the Supreme Court is fully authorized to render such judgment.

## Points and Authorities of Respondents.

I.—The paper offered in evidence by the Plaintiff to prove the contents of the agreement between himself and the Defendant Barton was properly excluded by the referee, because,—

1st, The Defendants having admitted the agreement to be precisely as alleged on oath by Plaintiff in his reply, there was no necessity of proving it further, and in the absence of such necessity, a resort to *secondary evidence* for such proof would have been manifestly improper.

2d, The paper was not shown to be a copy of such agreement.

The multitude of authorities cited by the Appellant's counsel to the point that such paper was improperly excluded, bear only upon the question what is a sufficient foundation for the introduction generally of *secondary evidence* in such cases. Not one of them bears at all upon the questions which arise in this case, viz: whether there was a necessity for any and especially for secondary evidence, and if so, whether the paper offered had been found to be a copy of the original agreement.

II.—That the question, "Can you state from your own re-collection of the terms of the contract between Irvine and Barton, whether the paper marked 'A' now shown you is a copy of that agreement?" propounded by Plaintiff's counsel to the witness Rice, was wholly immaterial and therefore properly excluded, is too plain to need discussion.

III.—The facts found by the referee, justified as they are by the admissions of the pleadings and the proofs of the Plaintiff himself, in connection with the further facts not merely *admitted* by the Plaintiff, but *alleged by him under oath* in his reply, taken all together and all appearing from the record, it is submitted, show not only that the action was properly dismissed by the referee, (this action was commenced on the 19th day of December, 1854,) but that the Defendants are entitled to final judgment in the cause, and this Court is authorized to render such judgment.

IV.—The agreement between the Plaintiff and the Defendant Barton, whether we assume that set out in the reply, or that proved by the witness Rice, to be the correct one, or even if we take the paper "A" to be a correct copy, (for they are all substantially the same,) is not an agreement to submit a controversy to arbitrators in the statutory or technical sense of an arbitration; but it is simply a declaration of the char-acter of the trust which the parties intended to create in the Defendant Marshall—a statement in writing made by the parties cotemporaneously with the payment of the money by them, of the disposition they desired the trustee to make of the property when he should have purchased it as contem-plated in the agreement.

V.—The fact that one-half the consideration for which the land was sold to the Defendant Marshall was paid by the Plaintiff, is only *prima facie* evidence of the trust claimed in his behalf, and parol evidence is admissible to rebut as well as to establish such trusts; the theory of these resulting trusts being that such must have been the intention of the parties; and it is entirely competent therefore to rebut the trust by any evidence going to show that such was not the intention of the parties. The agreement proved, as well as all the facts in this case show, that such was not the intention here.   2

*John. Ch. R.*, 408; 2 *Wend. R.*, 465; 15 *do*, 647; 3 *John R.*, 216; 4 *Watts. & Serg.*, 149; 4 *Kent's Com.*, 8*th Ed.*, 319, *marg. p.* 306; 4 *N. H.*, 397.

D. Cooper, Counsel for Appellant.

H. R. Bigelow, Counsel for Respondents.

*By the Court*—Emmett, C. J.—The facts of this case, as found by the referee to whom the several issues were submitted, are as follows :

On the 11th of September, 1854, the lands described in the complaint were purchased of the United States by the Defendant Marshall, for the sum of two hundred dollars, at a sale of the public lands held in Stillwater. For some time prior to said sale, both Plaintiff and the Defendant Barton claimed to have settled and made improvements upon said land, by virtue of which each insisted upon the exclusive right to purchase the same, when it should be offered for sale by the proper authorities. In anticipation of said public sale, and in view of these conflicting claims, the Plaintiff and Barton, on the 9th day of September, 1854, entered into a written contract, whereby it was agreed that the lands in dispute should be bid off at the then approaching sale, by the public bidder of an association called the " Ramsey County Claim Association," and the certificate of purchase taken in his name. That each of said parties should furnish one-half of the purchase money, and that the lands should thereafter be conveyed by said bidder, agreeably to the determination of five disinterested citizens, the award of whom or a majority of whom, should be binding upon each of said parties,—such citizens to be selected by said parties within thirty days, and if they should disagree, then the selection should be made by the President of said Association within fifty days, if practicable. Pursuant to said contract, each of said parties furnished and delivered to the Defendant Marshall, who was the public bidder of said Association, one hundred dollars to bid off and pay for said lands, and said Marshall did bid off and purchase

the lands at said sale, taking the certificate of purchase in his own name, as before stated, under and pursuant to this agreement between Plaintiff and Barton, and not otherwise.    Afterwards, on the 15th day of December, 1854, the Plaintiff, in due form, made demand of Marshall, that he convey to him an undivided half of the lands so purchased, but Marshall refused, and afterwards, but before the commencement of this action, conveyed the whole thereof to Barton.

The Plaintiff seems to have been ignorant of the conveyance to Barton, and brought this action to compel Marshall to convey to him the undivided half of the lands, and also to restrain him from conveying the same to Barton. He declares simply upon the fact that the lands were purchased by Marshall, with funds furnished by Barton and himself, alleging that Marshall had received the funds, and made the purchase in trust for the benefit of Barton, and himself, the Plaintiff; and had taken the certificate of said purchase in his own name, by arrangement between the Plaintiff and Barton.

The Defendants answered, denying the trust alleged, or resulting from the facts stated in the complaint; and set up an agreement between Barton and the Plaintiff, substantially like that found by the referee, and above stated, alleging that the Plaintiff and Barton furnished the purchase money, and that Marshall received the same, and bid off said lands pursuant and in subjection to said agreement by them set up, and not otherwise; and that Marshall afterwards conveyed all of the lands to Barton, according to the direction and award of five disinterested citizens, selected pursuant to the terms of said agreement, and to whom the parties had respectively submitted their claims to said lands.    They also alleged in detail the facts upon which Barton founded his claim to purchase the land as against the Plaintiff.

In reply the Plaintiff denies the facts alleged as the foundation of Barton's claim, and alleges facts to show that he, and not Barton, was entitled to the exclusive right to purchase the land at said sale. He then admits the signing of an agreement between himself and Barton, similar in all respects to that set up in Defendant's answer, and reported by the referee

as above stated, but he avers that he was forced and compelled to make and sign said agreement by certain orders and threats of said Claim Association, which he details at length, together with various other averments tending to show the illegal objects and designs of said Association in reference to said contemplated public land sale. He admits, also, that persons were selected to determine the claims to said land, of him and Barton respectively, according to the terms of said agreement, as alleged in the answer, and that the parties thereto *began* to submit to them their several proofs ; but he avers that before said persons made and perfected any award concerning the matters submitted to them, he, the Plaintiff, abandoned said arbitration and submission, and notified said Marshall that he claimed an undivided half of the lands ; and he denies that said persons made and perfected any award in the premises, or that said land or any part thereof was conveyed by Marshall to Barton, pursuant to the direction or determination of the persons aforesaid.

On the trial the Plaintiff commenced by introducing evidence to show the loss of the original agreement of September 9, 1854, in order to lay the foundation for the introduction of secondary evidence of its contents,—various objections to which were made by the Defendants, but they were overruled and the evidence admitted. The Plaintiff then produced certain evidence, tending to show that a certain paper then and there exhibited, was a true copy of said written agreement, and thereupon offered said paper in evidence, which is in the words and figures following :

"COPY.

"John R. Irvine and Thomas Barton, the claimants to the south-west quarter of section eleven, town twenty-eight, north, of range twenty-three west, agree that the same may be bid off by the public bidder in trust for them. Irvine to furnish half the purchase money, and Barton half. The lands to be conveyed agreeably to the determination of five disinterested citizens, the award of whom, or a majority of whom, shall be binding upon each claimant—such persons to be selected by the claimants within thirty days; and if they

disagree, then the selection to be made by the President of this Association within fifty days, if practicable, from this ate.                    (Signed)           " JOHN R. IRVINE.
                                           " THOMAS BARTON.
  "A. VANCE BROWN.
  " Benson Place, September 9, 1854."
  Indorsed —" In matter of John R. Irvine and Thomas Barton."

To the reception of this paper the Defendants objected on various grounds, which objection being sustained, the paper was rejected, and thereupon the Plaintiff excepted. The Plaintiff then introduced parol evidence of the contents of said agreement, and rested his case, without submitting or offering any evidence whatever as to any other point or issue. Whereupon the Defendants declined offering any evidence on their part, and moved to dismiss on the ground that the facts shown were not sufficient to sustain the action.

The referee thereupon found the facts as hereinbefore stated, together with a finding that each and every allegation of fact contained in the pleadings, on the part of the Plaintiff, except as therein in said report found, are untrue, and, as a conclusion of law arising from said findings, he held that the facts shown were not sufficient to entitle the Plaintiff to maintain his action, and accordingly he entered an order of dismissal.

The Plaintiff appeals to this Court, and insists that the referee erred in his several rulings on the trial, and in the conclusion of law which he drew from the facts found.

And first, as to the rejection of the alleged copy of the agreement of September 9, 1854. The Plaintiff seems to have insisted that there is, and the Defendants to have feared that there might be, an essential difference between the contract as it is alleged in the answer and as it is admitted in the reply, and the contract as it appears from the alleged copy. What the several differences and distinctions may be were not made manifest on the argument, nor have we since been able to discover any that are at all important to the determination of this case. There are it is true slight verbal differences, but in our opinion the object, sense and meaning are the same in all.  In the alleged copy, it is stated in terms that
  vol vii.—38

the land may be bid off by the public bidder *in trust* for them, [the Plaintiff and Barton], and had the agreement stopped here, we admit that without explanation, these words might have implied something quite different from the trust expressed in the contract stated in the answer, or that admitted in the reply; but the context shows conclusively to our minds that it is limited and restrained in the manner stated in the answer and reply. We think the same contract, in all essential particulars, is stated in each, and that the contract is identical with the contract found and reported by the referee and above recited. We find it difficult to understand why the Plaintiff should insist that the contract, as contained in the alleged copy, is essentially different from that alleged in his reply, because, if his position be correct, it demonstrates the impropriety of admitting the copy, without an amendment of his pleading, however well it might have been authenticated. We cannot, however, view the reply in any other light than as admitting the making of the agreement alleged in the answer, but setting up the plea of duress as a reason why the same should not prejudice the Plaintiff; nor are we able to find any reasonable distinction between the contract as stated in the alleged copy, and the contract as found by the referee, nor between either and the contract as it is stated in the answer or in the reply.

If we are right in this view of the matter, then the first three errors assigned by the Plaintiff, wherein he insists that he had laid the proper foundation for the introduction of secondary evidence of the contract,—that the Court erred in rejecting the alleged copy, and that the witness Rice should have been permitted to answer the question, "Whether he could state from his own recollection of the contract, that the paper shown him was a correct copy," become wholly unimportant. For as the sole object of the copy offered and rejected, and indeed, of all the evidence relating thereto, whether received or rejected, was to establish the fact that a contract, such as therein stated, had been entered into, of what possible injury could the rejection of such copy or of any evidence relating thereto, be to the Plaintiff, since the referee has found, notwithstanding such rejection, that the identical contract which

the Plaintiff desired to prove by the rejected evidence, had been made by the parties? The greatest benefit such evidence could possibly have been to the Plaintiff, would have been to convince the referee of the existence of the very contract, which the referee finds from other evidence to have existed between him and Barton.

It might, therefore, be safely admitted that the Plaintiff had laid the proper predicate for the introduction of secondary evidence of the contract of September 9, 1854; that the copy offered was properly identified as a copy; and that the referee erred in rejecting it; and that he also erred in overruling the question propounded to the witness Rice; yet such errors could not avail the Plaintiff here, because he does not appear to have been injured thereby.

The Plaintiff, in his fifth point, insists that the five citizens referred to in the contract of September 9, 1854, were to be selected for no other purpose than to divide the lands between him and Barton, according to the share of the purchase money furnished by each, and that such is the fair interpretation of the language used. We do not think the contract will bear this interpretation. It is not reconcilable with the relative situation of the parties at the time, nor with the object they evidently had in view in making the contract. Each party was making claim to the land, and endeavoring to bring himself within our statute law, which authorizes persons who have settled upon any of the public lands, upon which a settlement is not prohibited, and have made certain improvements thereon, to maintain an action for injuries to the possession, or to recover the possession. *Comp. Stats.*, 654. How they were to be benefited at the public sale by reason of these improvements, can make no sort of difference. They evidently thought that they acquired rights thereby. The claim of each extended to the whole of the land in dispute. The dispute between them was not as to which particular half, or other part of the land, either should have, nor about a division of any kind or in any manner, but as to which had the better right to have or purchase the whole and each particular part thereof; and it is not likely that, in agreeing to refer their difficulties to others for settlement, they would gravely enter

into an agreement to refer only a matter not in dispute, and leave the real cause of difference unsettled.

The Plaintiff's remaining two points are in substance the same, and are to the effect that a trust results to him, from having paid the half of the purchase money, in the manner and under the circumstances found by the referee; and that he is therefore entitled to a conveyance of an undivided half of the lands.

This position ignores entirely the agreement of September 9, 1854, and assumes that the presumption of fact, from which, according to numerous decisions in equity, a trust results in favor of a party paying the consideration for the purchase of real estate, cannot be rebutted by evidence, oral or written. But this assumption is not justified. The foundation of the trust resulting from such a state of facts, is the natural presumption, *in the absence of rebutting circumstances*, that he who supplies the money, intends the purchase to be for his own benefit, rather than for that of a stranger. 2 *Story Equity* 445. Now, not only does the language in which this doctrine is stated, as above, show that this presumption may be rebutted, but there are numerous decisions in which it has been directly held that it may be. *Id.*, 440, 446; 2 *Wend.*, 465, *and notes*. So, too, it is held that as the fact from which such trust resulted, could always be proved by parol, so also may it be rebutted by parol evidence. 2 *Wend.*, 465. Such is undoubtedly the established doctrine where such trusts are recognized; the question generally becoming a mere question of intent on the part of the person furnishing the consideration or purchase money.

Let us then examine this case with a view to ascertaining the real intentions of the parties furnishing the money, with which the land in controversy was purchased. The presumption that the parties intended the land to be purchased for their benefit, in proportion to the amount of the purchase money furnished by each, is repelled not only by the terms of the contract entered into at the time of furnishing the money, but by all the attending facts and circumstances. Marshall, by the express terms of the contract of September 9, 1854, was to acquire the lands, and hold them in trust, not for the

benefit of the parties equally, or in common, but to convey them to the one, or the other, or to both, as he might thereafter be directed, by certain persons selected as therein provided, but in no event was he obliged to convey to either, unless directed so to do by the persons thus chosen; and as it was neither proved, nor alleged even, that he was ever directed to convey any portion of the lands to the Plaintiff, as every allegation of fact upon which the Plaintiff predicated his claim as against the Defendant Barton, every allegation of fraud or duress, by which he seeks to avoid the making and signing of said agreement, has been found by the referee to be untrue, it is difficult to see what right he has to the conveyance he demands, or indeed to any conveyance.

·It was insisted on the argument, although I do not find it among the points submitted, that this agreement was but a submission to arbitration, and was void, because it did not conform to the statute; that the Plaintiff had a right to, and did abandon the arbitration or submission, before any award was made. Counsel seemed to have overlooked the fact, that if this had been a statutory submission, it could not have been revoked; and that the referee by his general finding, found this allegation of abandonment untrue. But suppose it should be admitted that this agreement of submission could not have been enforced because it did not conform to the statute, and also that the Plaintiff had a right to and did repudiate it, does it follow that under such circumstances he could rightfully demand more than to be reinstated in his rights, as they existed at the time the agreement was entered into? The facts connected with this case fully satisfy us, that the purchase money would not have thus been furnished by the Plaintiff and Barton; that Marshall would not have so received it, and that he would not have made the purchase for the benefit, in any manner of the Plaintiff, or Barton, had it not been for the stipulation that the lands should thereafter be conveyed, according to the direction of disinterested men. This last was the main object of the agreement, and the moving and sole consideration or cause of the other stipulations. The agreement must therefore be considered as an entirety, including the furnishing and receiving of the purchase money

and the purchase for the particular purpose specified therein, as well as the stipulation that the title should be disposed of as certain third persons should direct ; and the Plaintiff should not be allowed to repudiate the agreement as to part, and claim any benefit of the remainder. He cannot repudiate the submission without also repudiating the purchase, which would leave him with a claim to the purchase money only, for he cannot throw himself upon his rights as they existed prior to the making of this agreement, because every allegation on which he based those rights is found by the referee to be untrue.

But while that portion of the agreement referring to submission may not be considered as a valid agreement to submit to arbitration under the statute, we think it is certainly good as a declaration of the trust upon which Marshall received the money and made the purchase, and that, until it is shown that that trust has been violated, no action can be maintained against him.

There is however another question involved in this case, and that is whether the statute of this State which declares that "where a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the person making the payment," is applicable to sales of or transactions concerning the public lands, or to the present case ; for if the statute does apply, there is an end to this action.

This question has already been before the Supreme Court of the United States in this very case, upon a demurrer to the complaint ; and it was there decided that the statute could not apply. *Irvine vs. Marshall and Barton*, 20 *How.*, 558. Ordinarily we would regard such a decision as absolutely settling the question, and so we must consider it so far as this case is concerned ; but there are many reasons why we should not be willing to follow it in other cases, until it is reaffirmed by another decision :

1st. This Court in *Wentworth vs. Wentworth*, 2 *Minn.*, 277, for reasons then and still satisfactory to us, held substantially that the statute did apply to the case of a purchase of the public lands in this State.

2d. The decision in 20 *Howard* was the decision of a bare

majority of the Court; three of the members agreeing with Justice Nelson in a dissenting opinion, which seems to us unanswerable.

3d. It is believed that the Court, as at present constituted, would now take a different view of the question.

4th. The opinion of the majority is suggestive of doctrines, and seems based upon grounds which are subversive of State sovereignty.

We do not propose to defend the system of practice which has been adopted in this State, and for which we have been arraigned in the opinion referred to. It is believed our Legislature is the sole judge of that matter; at any rate, that body still continues, notwithstanding said opinion, to exercise the right to regulate the practice in our courts. Nor are we called upon to maintain the propriety of the statute, which, except in certain cases, abolishes resulting trusts. We may safely leave the discussion of that matter to the dissenting opinion of Justice Nelson, who, as we think, fully vindicates the wisdom of such a policy. It is our misfortune, also, that we cannot see clearly any distinction between the legislative powers of a Territory and those of a State, justifying the conclusions to which the Court arrived in the case referred to. And notwithstanding the reminder that the Territory which had dared to enact the statute under consideration was but "inferior and subordinate," and the assertion that it was "itself the *property* of the United States," we are still of the opinion that a Territory has quite as much legislative authority over the subject as a State would have.

The Court, however, adopted as asserting the true principle, the language of the opinion delivered by the same tribunal in the case of *Wilcox vs. Jackson*, 13 *Pet.*, 498, wherein it is declared, "that whenever the question in any Court, State or Federal, is whether a title to land which was once the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then the property, like all other property in the State, is subject to State legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

It is not to be understood by this language that so long as the title is not perfected by a patent, the property and all contracts concerning it are to be governed exclusively by the laws of the United States; for if that were the case, the State, having no control over the issuing of the patent, might never acquire jurisdiction, although the general government may, to all intents and purposes, have disposed of the soil, and enjoyed the proceeds. We interpret it as asserting only, that the mere question of whether the United States has parted with its title must be determined by the laws of the United States only; and that the title having once passed, the general government has no further control.

This is undoubtedly correct, and goes quite far enough to protect the Federal Government, in its proprietary interest in the public lands within a State; which is all that is sought to be accomplished by the compacts made with the several States in which these lands lie. But it is unnecessary to go any further. Once the government divests itself of the title, it has no further interest in the matter; and what shall become of it thereafter, or who is really entitled to the fee thus transferred, should be determined by the State laws only.

Still, as it is not made a question in this case, whether the title, or any interest whatever has passed from the United States to Marshall, the purchaser, it is somewhat surprising that the case of *Wilcox vs. Jackson*, should have been referred to as conclusively settling that the rights of the parties are to be determined by the laws of the United States only. Indeed there is nothing to indicate that the title had not passed at the commencement of the action. But admitting that such was not the fact, the Defendants do not ask to interfere in the least with the giving of the title to the purchaser, nor to restrain the officers of the government from conveying to the alleged *cestui que trust*, instead of the trustee. They are content with things as they are, and insist on nothing which is not in affirmance of the purchase by Marshall, who is the only person known to the government,—who is not known however as a trustee; nor would the land department undertake to determine whether or not he stood in that relation to any party, if the fact were disputed, but would issue the

patent to him as the purchaser, leaving the parties to determine their respective rights before the proper judicial tribunal. This is understood to be the course uniformly adopted by the land department.

This action however is based upon the assumption that the title, or a valuable interest of some kind passed to Marshall; and it is that interest or estate whatever it is, which the Plaintiff is endeavoring to reach. But if no interest passed, then the action is premature, for there is nothing to be reached by it—nothing to which the particular laws which the Plaintiff invokes can apply. And if we take it for granted that the title has passed, then that primary disposition of the soil which was reserved to the United States has been made, by the sale to Marshall; and the statute of the Territory, so far from interfering with this disposition, would, if applied, only confirm it, and prevent a disposition to another. Indeed there can be no interference unless the Plaintiff be permitted to maintain his action.

The judgment below is affirmed.