JOHN O'DEA *vs.* CITY OF WINONA.

September 10, 1889.

**Contract for Filling, Grading, etc.— Modification — Evidence.—** The plaintiff entered into a contract with defendant to fill and grade one of its streets, and to build a low retaining wall upon each side of the fill or embankment, in accordance with plans and specifications already prepared by the city engineer. The work was to be done at a certain price per cubic yard, under the direction of the engineer, subject to his approval, to his satisfaction, and to the satisfaction of the city council. The grade line was laid down in the usual manner upon the engineer's plan or profile. It was conceded that, at some time after bids were called for, and the acceptance of the one filed by the plaintiff, the council determined to have less work done than was provided for in the plans and specifications. But there was no record indicating when this decision was made, and none which clearly showed to what extent the contemplated improvement was curtailed, changed, or abandoned. In the record of the proceedings of the council meeting at which plaintiff's bid was accepted,—he being present, —appeared a statement as to what transpired, which tended to show these changes as then understood and agreed upon by the members of the council and the engineer, who was also present. *Held,* that the trial court did not err in receiving the record in evidence.

**Same—Practical Construction by Parties.—**The engineer thereafter—it being necessary for him to do so—fixed the grade line upon the ground, laid out the work, and gave general directions to the plaintiff, but departed from the plans and specifications, principally as to the height of the fill or embankment. The plaintiff, in good faith, proceeded to complete the contract, as he supposed, under the constant supervision of the engineer, who finally estimated the amount and accepted the work. *Held,* that there was a practical construction of the contract which could not be ignored or disregarded by the courts.

**Same—Work "to the Satisfaction" of the Other Party—Recovery on Contract.—**When a party has substantially complied with the terms of a contract which he is to perform to the satisfaction or approval of the other party, whereby the property of the latter has been materially benefited, the improvements and benefits being of such a character that they must necessarily be appropriated and retained by the party for whom they are made, the contractor is entitled to recover upon his contract.

Same—Quantities, how to be Ascertained.—When a contract provides that the pay quantities of earth shall be computed from borrow pit and excavation measurements, it does not conclusively follow that the pits and excavations from which the earth is taken, must be measured.

Same—Measurements in Fill and not in Excavation.—From the testimony it appeared that such pay quantities are as accurately and as frequently ascertained by measuring the cubic yards in the fill or embankment, and deducting a well-established percentage for the known difference in the measurement of earth before and after removal; and it further appeared that this method was adopted by the city engineer when estimating the pay quantities in this case. *Held*, that it was not error to permit a recovery, upon showing the number of cubic yards of earth removed under this manner of measuring.

Appeal by defendant from an order of the district court for Winona county, *Start*, J., presiding, refusing a new trial after verdict of $2,964.23 for plaintiff.

*W. A. Finkelnburg* and *M. B. Webber,* for appellant.

*Gould & Snow,* for respondent.

COLLINS, J. The council of the defendant city, contemplating the grading and improvement of some two miles of one of its thoroughfares leading into the country, directed its engineer to prepare and submit a plan or profile of the proposed work, with proper specifications, on which bids might be solicited. This was done May 28, 1888, and the council then advertised for bids. The plaintiff was the lowest bidder, whereupon the matter was referred to a committee, who subsequently advised and reported that the proposed work should be lessened and curtailed. On June 25th, a resolution was adopted by the council, awarding to plaintiff the contract for the improvement of the street in question from one certain named point to another,— only a part of the distance covered by the plan and profile, the improvement of the balance having been abandoned, it seems. On July 7th, plaintiff and defendant entered into a contract for the work on that part of the street lying between the points named in the resolution, which was to be done in accordance with the plans and specifications above referred to, and to the satisfaction of the council and city engineer, at a certain price per cubic yard for each of two distinct classes of work. The specifications also provided that

the work should be done subject to the approval of the city engineer and under his direction. The plaintiff claims to have complied with the terms of his contract, which defendant denies. The motion for a new trial, made after plaintiff recovered a verdict in the court below, having been denied, the defendant appeals.

The defendant insists that the trial court erred in permitting the plaintiff to introduce testimony tending to show that at a council meeting on June 27th, when plaintiff's bid was accepted, there were inquiries made by members of the council, and answers by the city engineer in plaintiff's presence, which indicated that there had not only been a departure from the original plan of improvement as to its extent, but also as to its character; and that at some time subsequent to the presentation of the profile to the council and the commencement of the work, the engineer directed and caused a new grade line to be laid down on the profile,—the principal result claimed from the alleged change being a reduction or lowering of the fill exactly two feet; that is, the top of the road-way would thereby be two feet lower, when completed, than as first designed. It is undisputed that before, or perhaps at the time, plaintiff's bid was accepted, the city council determined to abandon all improvement of a part of the street. Just when or how this conclusion was reached is not apparent from the testimony, the only record thereof or allusion thereto, so far as we have been able to discover, being in the resolution accepting the bid for a part of the work, and in the minutes of the meeting before referred to. And from these minutes it might well be inferred that the changes intended by the plan to curtail the expense were much more radical than the single change in distance indicated by the resolution. The contract between the parties made, so far as applicable to the work to be done, the plans and specifications submitted on May 28th a part of it. By the specifications, the work was to be performed under the direction of the city engineer and subject to his approval, while in the contract it was provided that it should be done to the satisfaction of both council and engineer, as well as in accordance with the plans and specifications. The chief controversy arising out of a consideration of this alleged error is as to the grade line to which plaintiff contracted to bring the embankment or fill. The defendant insists

that the work was not completed according to contract, because the grade was not brought to correspond with the line indicated upon the profile in red ink, while the plaintiff claims that another grade line was established on the profile, as well as upon the ground, to which he worked; the practical difference being two feet, as before stated.

We are safe in asserting that no matter which of these lines should be regarded as the correct one, the grade itself would have to be fixed and indicated upon the ground by a person qualified, to some extent, in civil engineering. With nothing but the plans, profile, and specifications, the ordinary contractor or non-expert could not safely proceed with the work. Therefore, and in accordance with the universal custom, the work was laid out on the ground by means of grade marks placed upon telegraph poles, which were alongside the roadway as then travelled, instead of upon stakes, as is customary. This was done for the information and guidance of the plaintiff by an assistant of the engineer, but under his direction and supervision. And the grade thus established was in conformity with the new line alleged by plaintiff to have been laid down upon the profile. To these marks, and to the grade so fixed under the personal supervision of the city engineer, and with his express approval, the plaintiff, in good faith, brought and completed the fill, as he claims, and as the jurors evidently believed. The testimony in question tended to show that at some time prior to the commencement of the work the council had made or sanctioned the change in the grade; that the members knew of it; and that the engineer's acts in reference thereto were not disapproved. It also had a tendency to show, among other things, that the plaintiff was acting honestly when performing the work in the manner directed by the defendant's authorized and official representative. The contract does not seem to have been unprofitable. The work was to be paid for by the cubic yard, not by the job; and if, under circumstances like those existing here, a contracter, acting in good faith, receives his grade lines and directions from the engineer designated to establish the lines and give the necessary instruction, whose duty it is to look after the work and supervise its performance; who does this by attending upon its construction almost daily; who approves and finally certifies that it has been performed in accord-

ance with the terms of the contract,—he must be permitted to recover. The fault, if there be one, is not chargeable to the contractor, but to and upon the party with whom he has dealt, and upon whose agents and officers he was authorized and compelled to rely.

It is further urged that the court erred in charging the jury that the plaintiff might recover without showing that the work had been performed to the satisfaction of the city council. In support of this position, we are cited to a number of cases wherein were involved contracts for the making of some article of adornment or convenience, or to gratify the taste or personal preferences of one of the parties, to his satisfaction, or subject to his approval; such, for instance, as *Gibson* v. *Cranage*, 39 Mich. 49, where plaintiff contracted to make a portrait; *Brown* v. *Foster*, 113 Mass. 136, in which plaintiff had agreed to make a suit of clothes for defendant; and *Zaleski* v. *Clark*, 44 Conn. 218, a case wherein it appeared that plaintiff's contract was to make a bust of defendant's deceased husband. In each of these cases, and in others of like character, it has been held that the party for whom the work is done may determine for himself,—may arbitrarily accept or reject as he chooses. And it is claimed that there is another class of cases, somewhat difficult to distinguish, perhaps, from those above mentioned,—the distinction being suggested in *Wood Reaper Machine Co.* v. *Smith*, 50 Mich. 565, (15 N. W. Rep. 906,)—wherein it is held that the dissatisfaction of the party must not be pretended; it must be real, in good faith, and not capricious. In this class may be ranked *Wetterwulgh* v. *Knickerbocker Building Ass'n*, 2 Bosw. 381; *Manufacturing Co.* v. *Brush*, 43 Vt. 528; *Singerly* v. *Thayer*, 108 Pa. St. 291, (2 Atl. Rep. 230.) See, also, *Daggett* v. *Johnson*, 49 Vt. 345; and *Silsby Mfg. Co.* v. *Town of Chico*, 24 Fed. Rep. 893. But the case at bar is not governed by the same principles. The courts in which this question has been passed upon may not have adopted the same method of reasoning to reach a conclusion; but all seem to agree that where one party has substantially complied with the terms of a contract which he is to perform to the satisfaction or approval of the other party, whereby the property of the latter has been materially benefited, the improvements and benefits being of such a character that they must necessarily be appropriated

and retained by the party for whom they were made, the contractor is entitled to compensation, and may recover upon the contract or upon *quantum meruit.* In Massachusetts, it has been frequently held, in actions wherein the facts were the same as in the case at bar, that while a contractor cannot recover upon the contract he may upon a *quantum meruit* count. *Snow* v. *Inhabitants of Ware,* 13 Met. 42; *Walker* v. *Inhabitants of Orange,* 16 Gray, 193; *White* v. *Inhabitants of Quincy,* 97 Mass. 430. In *Duplex Boiler Co.* v. *Garden,* 101 N. Y. 387, (4 N. E. Rep. 749,) which was an action brought to recover the contract price for the alteration of steam-boilers, which price was not to be paid until the defendants were satisfied that the boilers, as changed, were a success, it was said, citing earlier cases, "that which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." Recovery upon the contract was permitted, attention being called in the opinion to the distinction, before mentioned, between the case under consideration and those in 39 Mich., 113 Mass., and 44 Conn., *supra.* This dissimilarity is also very lucidly presented in Addison on Contracts, *393. In any view of this case, the defendant ought not to complain of the charge upon the point under discussion, for, in substance, it was correct. *Phillip* v. *Gallant,* 62 N. Y. 256; Add. Cont. § 864. And see *Dermott* v. *Jones,* 23 How. 220; *Dutro* v. *Walter,* 31 Mo. 516; *Veazie* v. *City of Bangor,* 51 Me. 509; *Fuller* v. *Rice,* 52 Mich. 435, (18 N. W. Rep. 204.)

The specifications provided that "pay quantities should be computed from excavation and borrow-pit measurements." The appellant objected to testimony tending to show that it was not practicable, in this instance, to measure the borrow pit, that embankment measurements were adopted instead, a certain and customary allowance being made for the difference in measurements, and testimony as to the number of cubic yards in this way of measuring, upon the ground that the specifications provided for measurements of or at the borrow pit only. It was not claimed upon the trial that this method of ascertaining the number of cubic yards of earth in the fill, borrow-pit measurement, was incorrect or unusual. In fact there was no attempt to contradict the testimony produced by plaintiff that it is

quite customary, in this class of work, depending upon the convenience of the engineer, to measure the yards of material in an embankment (allowing a well-known percentage for shrinkage) instead of the number of yards of pit or excavation from which the material has been removed, in order to determine pay quantities according to the measurement prescribed in the specifications. The quantity of the earth taken from the borrow pit was what defendant contracted to pay for, and this, it appears from testimony, is as frequently and can be as accurately ascertained in the manner actually pursued as that now insisted upon by defendant. The court ruled correctly upon this point. Even if it be admitted that in measuring the pay quantities, in establishing the grade lines on the ground, and in the general manner in which the work was done, there was a variance from the literal meaning of the contract, there was a practical construction put upon it by all parties which cannot now be ignored, or disregarded by the courts. *District of Columbia* v. *Gallaher*, 124 U. S. 505, (8 Sup. Ct. Rep. 585.) We have not overlooked the remaining assignments of error, but they are of no materiality.

Order affirmed.

NOTE. A motion for reargument of this case was denied October 3, 1889.