WHITE SEWING MACHINE COMPANY v. J. D. MILLER and Others.[1]

October 29, 1896.

Nos. 10,029—(34).

**Bond—Construction—Contemporaneous Contract.**

   A bond of indemnity considered and construed. *Held*, that the obligations assumed by the obligors were not restricted to the performance of the terms of a certain contract entered into, as a part of the same transaction, by and between the principal obligor and the obligee named in the bond.

**Same—Expressed Intent.**

   When the parties to such an instrument express an intent therein as to what construction shall be placed on the language used, that intent, however expressed, is binding upon the courts; no question of good morals, or public policy, or a violation of law being involved.

Appeal by plaintiff from an order of the district court for St. Louis county, Ensign, J., denying motions for a new trial and for judgment notwithstanding the verdict. Reversed.

*Schmidt, Reynolds & Mitchell,* for appellant.

*C. T. Crandall* and *Bert Fesler,* for respondents.

COLLINS, J. May 31, 1893, defendant Miller delivered to the plaintiff company a bond executed by himself and the other defendants, May 24, in the penal sum of $3,000, and conditioned that said Miller should

"well and truly pay, or cause to be paid, *any and every indebtedness or liability now existing, or which may hereafter in any manner exist, or be incurred* on the part of the said J. D. Miller to the White Sewing Machine Company, or its assigns, *whether such indebtedness or liability* shall exist in the shape of *book accounts, notes, or leases, renewals or extensions of notes, accounts or leases, acceptances, indorsements, consignments of property or merchandise, failure to deliver and account for the same,* or any part thereof, or otherwise, and whether such indebtedness shall be incurred *under any contract* between said White Sewing Machine Company and said J. D. Miller, *or otherwise;* and whether the same shall arise out of the *purchase and sale of sewing machines, or otherwise;* hereby waiving presentment for payment,

[1] Reported in 68 N. W. 851.

notice of nonpayment, protest and notice of protest, and diligence upon all notes, accounts or leases, now or hereafter indorsed, transferred, guaranteed or assigned by the said J. D. Miller to the White Sewing Machine Company, its agents or assigns."

Following the conditions were other provisions concerning the obligations of the makers of the bond, including these words, in reference to the bond: "*and the same is made, and shall be construed, without reference to any other instrument or agreement whatsoever.*"

At the same time Miller delivered to the company an instrument signed by himself as party of the second part, which was afterwards signed by the proper officer of the company, as of the first part, and in which it was agreed that the latter should sell to Miller its different styles of machines at certain fixed prices; that he should have exclusive territory, designated as "Duluth and vicinity," in which to dispose of these machines; and that he should sell no other. The company was to keep a book account of Miller's indebtedness, rendering monthly statements thereof to him; and on the receipt of each of these statements he was to execute "a promissory note for the amount therein stated, dated on the first day of said month, or date of said statement, *and payable in six months therefrom.*" There were other provisions in each of these instruments, but we have quoted or stated all that have any bearing here, italicizing such parts of the language quoted as we deem significant.

Miller received a number of machines, and afterwards executed and delivered to plaintiff six promissory notes, maturing at different periods of time from the days on which they were dated, ranging from 6 to 12 months. In some of these notes interest was fixed at 6 per cent. before maturity, but at 8 per cent. thereafter, while in several there were stipulations for payment with exchange on Chicago, and also that, if not paid at maturity, an attorney's fee for collection, fixed at a certain per cent., should become due, and could be included in any judgment obtained thereon. These notes maturing and remaining unpaid, plaintiff brought this action on the bond to enforce collection of the total sum due. Two of the sureties answered, and the other defendants defaulted. At the close of the evidence the court directed, and the jury returned, a verdict for the answering defendants.

The trial court seems to have been of the opinion that the execution and delivery of the bond and contract were parts of one and

the same transaction, and to be construed together; that, so construed, the bond was simply given for the purpose of securing performance of the terms of the contract; and that, if the notes sued upon departed in any material features from those specified in the contract, the sureties on the bond were exonerated from liability. As the notes in question did materially differ from those provided for in the contract, all of which were to be made payable in six months, without interest or other conditions, the court held, as a matter of law, that plaintiff could not recover on any of them. We are clearly of the opinion that the court erred.

It may safely be assumed that the bond and the contract were parts of the same transaction, to be construed together; but from this fact it is not conclusively established that the sureties on the first-mentioned instrument did nothing more than become liable for their principal's failure to comply with the terms of the contract entered into at the same time. The extent of their liability is to be gathered by reading both instruments, neither of which seem to be indefinite or ambiguous. Taking both as component parts' of a single transaction, there exists no reason why the bond could not have been indemnity for a part, only, of the terms of the contract to be performed by Miller; and equally as well could it impose upon the signers additional obligations entirely independent of those found in the contract, and thus extend or enlarge the liability of those who signed it. That the bond covered, and was indemnity for, Miller's performance of all of the terms of the contract, and that in no manner was it inconsistent with any of such terms, cannot be questioned; and, if we are to give effect to plain language, there can be no doubt that it was also executed and delivered for other, independent, and distinct purposes.

The obligors became responsible, if the language used means anything, for the payment by Miller to the company of all indebtedness, past, present, and future,—no matter how incurred, or in what form existing. In express terms, it covered any liability of Miller's growing out of leases or acceptances or indorsements or consignments of property, while the contract simply fixed the prices at which the company would sell its machines to him, and the time and manner in which he was to account therefor, by delivering six-months notes upon the rendition of monthly statements. Not a word was said in

the contract about leases or acceptances or indorsements or consignments. In addition to this, we find an obligation to pay Miller's indebtedness, whether incurred "under any contract" between the parties "or otherwise, and whether the same shall arise out of the purchase and sale of sewing machines, or otherwise."

It would seem remarkable if this very comprehensive language could be wholly disregarded, and the obligors upon such an instrument be discharged, by showing that as a part of the transaction the plaintiff company fixed prices at which it would sell its machines to Miller, and the terms upon which he could account for such machines as he purchased, and that such terms had not been strictly observed. If parties became sureties for the payment of a principal's indebtedness arising under "any" contract he may enter into with a party named, it is difficult to see how their liability is to be restricted to a single contract simply because such contract happened to be entered into at the time the sureties became liable. If the obligation of the sureties expressly provides for any liability arising upon "any" contract, or arising on certain specified forms of indebtedness, or arising "otherwise," we fail to understand upon what rule of construction the proposition can be rested that the obligation simply referred to and covered one contract, in which but one form of indebtedness was mentioned.

It is further to be observed that the bond contained a stipulation that it "is made, and shall be construed, without reference to any other instrument or agreement whatsoever." The trial court seems to have regarded this clause as a studied attempt to limit the power of the court, should litigation ensue, in the reception of evidence as to a proper construction of the bond. We do not so regard it. The language used when expressing the conditions found in the instrument was unambiguous, and the clause in question was a declaration that the parties so intended it. There was no limit to the obligations which might be assumed by the makers of the bond, or the indemnity contract they might enter into, unless the same were against morals or public policy, or in some other way violated the law. The clause was nothing but a declaration of the purpose and meaning of the obligors,—an emphatic expression of an intent to abide by what had been written. When parties to a contract express an intent as to what construction shall be placed upon the language used, that in-

tent, however expressed, is binding upon the courts; no question of good morals, public policy, or a violation of law being involved.

At the close of the evidence, plaintiff's counsel moved the trial court to direct a verdict in its favor for the amount due upon the notes, and the motion was denied. And, when moving for a new trial, counsel also moved that judgment be entered in favor of plaintiff, notwithstanding the verdict, and this was denied. As plaintiff was entitled to have a verdict at the close of the evidence, the case is brought directly within the provisions of Laws 1895, c. 320.

The order appealed from is reversed, and the court below is ordered to cause judgment to be entered in plaintiff's favor for the amount due on the notes.