PARK CONSTRUCTION COMPANY v. INDEPENDENT SCHOOL DISTRICT NO. 32, CARVER COUNTY.[1]

October 29, 1943.

No. 33,403.

[1]Reported in 11 N. W. (2d) 649.

28

See 209 Minn. 182, 296 N. W. 475.

*O. A. Brecke* and *E. T. Chesnut,* for appellant.

*W. F. Odell,* for respondent.

PETERSON, JUSTICE.

On the prior appeal, Park Const. Co. v. Independent School Dist. 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59, this court held that the complaint stated a cause of action upon an award rendered in a common-law arbitration under a general submission. After our decision, defendant interposed an answer setting up numerous defenses, only one of which was litigated, *viz.,* that upon the face of the proceedings before the arbitrators the award was so erroneous as to compel a finding that the arbitrators acted with prejudice and bias and not in the exercise of a fair and impartial judgment.

The case was submitted below upon the record before the arbitrators, which contained a stenographic report of all the proceedings had and of all the evidence and exhibits received in the arbitration proceedings.

The dispute arose out of plaintiff's claim for the balance due for work done under a contract with defendant dated December 21, 1938, let upon competitive bidding, to construct a high school athletic field according to plans and specifications prepared by defendant's architect. The contract price was $5,168.36, from which the parties by supplemental agreement deducted $889.87 for certain omitted work and allowances, reducing it to $4,278.49. During the progress of the work defendant allowed and paid $755.55 and $1,978.20, the amounts of two estimates less 10 percent retained. The balance claimed by plaintiff was $1,116.89 plus the retained percentage.

The field was to be constructed by excavating earth from the upper portion of a hill and filling an embankment on the lower portion thereof and by grading the excavated and filled areas to a common level. The area surrounding the cut in the hill was to

be a sort of amphitheater; that surrounding the playing field was to be sloped and graded to the adjacent lands.

The plans showed a total excavation of 10,448 cubic yards and a filled embankment of approximately 15,000 cubic yards. It was obvious, therefore, that the work could not be done according to the plans, because, as plaintiff's engineer stated, "you cannot build some 15,000 yards of fill and embankment with 10,000 yards of excavation." The discrepancy was discovered before the contract was signed. Plaintiff's evidence, which was contradicted by defendant's, was to the effect that the parties agreed that, in order to get additional excavation for filling, the level of the field should be lowered six-tenths of a foot and part of the dirt excavated in building an addition to the school should be used for filling. One of defendant's officers testified that plaintiff orally agreed to haul dirt from the outside to complete the fill. This plaintiff claims it was unwilling to do unless it was paid extra compensation. It is undisputed that the members of defendant's board informed plaintiff's representatives that it would not pay any additional compensation for dirt hauled from the outside for filling. Notwithstanding their full knowledge of the facts relating to the miscalculation of the amount of filling required and that the embankment could not be adequately filled with the dirt excavated from the cut, the contract was executed and plaintiff entered upon its performance.

There was a sharp dispute as to whether plaintiff was obligated under the contract to procure the filling from the outside. Defendant claimed that plaintiff was required to do so under a provision in the specifications to the effect that the contractor shall furnish all materials and perform all work shown on the plans and described in the specifications. Plaintiff claimed that this provision related to the things the parties contemplated the contractor should supply, such as cinders for the running track (which provision was later eliminated), oil, gasoline, and similar items, but not dirt in place, which was not to be supplied but was to be excavated, moved, and graded. In support of its view, plaintiff contended (1) that providing filling was impliedly excluded from its contractual obli-

gation by provisions under two separate headings in the specifications, "Rough and Finish Grading" and "Removal and Securing Additional Soil," requiring the contractor to provide all additional topsoil necessary to complete the work, and the absence of any provision requiring it to provide additional filling; and (2) that, since according to the undisputed testimony of an engineer of large experience in such matters the term "materials" had a well-known meaning which did not include dirt filling under such a contract, the term was to be so construed under a provision of the specifications that words describing materials "shall be construed in accordance with such well-known meaning recognized by architects, engineers and the trade."

Likewise, there was a sharp dispute as to whether defendant agreed that the level of the field should be lowered six-tenths of a foot. It denied such an agreement. Although its records showed consent to other changes, they did not show it with respect to this one. For lack of such record, defendant contended that the change was not binding upon it, since the specifications provided that changes could be authorized only "upon proper action by its governing body." The specifications provided that every part of the work should be executed under the direction and supervision of its architect and that the architect should set the stakes for the rough and, where required for accurate finish grading, finish grading levels. The architect did not direct and supervise the work to any substantial extent or set any grading level stakes. According to the specifications, the rough grading level was to be six inches below that of the finish grade. Because of the omission of defendant's architect to do so, plaintiff set the stakes for the rough grading. An assistant architect was present at the time and made no objection to the change. With knowledge of the change, he certified that the "entire field has been laid out according to the plans." During the progress of the work he certified that an estimate on a PWA form, dated December 31, 1938, for $839.50 (less 10 percent retained percentage), filed by plaintiff for rough grading done according to the level as changed and lowered, was in full

accord with the terms and conditions of the "contract documents," of which the specifications were a part, and "authorized changes thereto." On April 29, 1939, another assistant architect made a similar certificate for the balance of the rough grading, amounting to $2,198 (less 10 percent retained percentage). Defendant allowed and paid both estimates.

After the estimate of April 29, 1939, was allowed and paid, plaintiff demanded that the architect set the finish grade stakes. Because the architect failed to comply, plaintiff had the stakes set by its own engineer and completed the job, except for some embankment filling, for which no dirt was available on the premises. The testimony tended to show that the excavation of the hill, the filling of the embankment, and the construction of the playing field were according to the plans and specifications, with the exceptions presently to be mentioned. In the corners outside the playing field the embankment was about four feet lower than the plans showed. This was due to lack of filling. In performing the work, plaintiff excavated and moved 14,552 cubic yards of dirt, 4,104 cubic yards more than was shown on the plans. There was not enough drainage for the playing field. This was due to a defect in the plans. The playing field was graded according to the plans, except for a few low and rough spots which could be readily remedied. The assistant architect inspected the job and stated that he saw no reason why it should not be accepted, but he referred the matter to the architect for decision.

Thereafter defendant refused to allow and pay for the balance of the work, upon the grounds that plaintiff had failed to perform the contract in at least three particulars: (1) That the playing field was constructed at a level six-tenths of a foot lower than that provided in the plans and specifications; (2) that the area surrounding the playing field on the lower side of the embankment was not filled to the level thereof; and (3) that the playing field itself was so constructed that it was rough and without adequate drainage.

The dispute was then referred to arbitration. After full hearing,

the board of arbitration found that the plans did not provide sufficient excavation to make the embankment; that the shortage was due entirely to an error on the part of the architect; that plaintiff as contractor was not required to obtain any outside dirt for filling; "that while the surface of the field is not now in good shape this condition is mainly due to the lack of supervision by the architect, who is the representative of the School District on this job, and to no finishing stakes being furnished by him as requested by the Contractor, which he is entitled to, and we believe always necessary before the completion of a job where so little provision is made for drainage"; that therefore the job must "be considered complete insofar as this contract is concerned"; and that plaintiff is entitled to recover the amount claimed by it. The arbitrators denied a claim by plaintiff for extra compensation for excavating and moving the 4,104 cubic yards of dirt in excess of the quantities shown on the plans.

The court below found that plaintiff had failed to perform the contract according to its terms by lowering the level of the field, by failing to fill the entire field, including the area surrounding the playing field, to the level shown on the plans, and by failing to grade to level the playing field so as to make it smooth and adequately drained; and concluded that the award of the arbitrators was void and that plaintiff was not entitled to recover anything. Plaintiff appeals.

■ Under a general submission at common law, arbitrators are not bound to decide according to the principles of law applicable in a court of justice. Consequently, in cases arising under contract, they are not required to determine the rights and liabilities of the parties according to the strict or technical terms of the contract as construed by the letter of the law. Panhandle G. & E. Co. v. Dorsey (Tex. Civ. App.) 242 S. W. 255. Arbitrators as a rule are unlearned in law. They are expected to decide the matters in dispute according to those principles of equity and good conscience which, in their opinion, will do justice between the parties, untrammeled by the niceties of the law. By submitting an entire dis-

pute to arbitration, the parties submit the law as well as the facts to the judgment of the arbitrators and agree to be bound by their judgment. Goddard v. King, 40 Minn. 164, 41 N. W. 659; Daniels v. Willis, 7 Minn. 295 (374); Kleine v. Catara, 14 F. Cas. page 732, No. 7869 [2 Gall. 61]; Reily v. Russell, 34 Mo. 524; Clark Millinery Co. Inc. v. National Union F. Ins. Co. 160 N. C. 130, 75 S. E. 944, Ann. Cas. 1914C, 367.

Arbitrators are private tribunals, deriving their powers from the parties, as manifested by the terms of the submission. Daniels v. Willis, 7 Minn. 295 (374), *supra*. "The submission is the commission of the arbitrator." Leslie v. Leslie, 50 N. J. Eq. 103, 107, 24 A. 319, 320. Arbitrators do not exercise judicial power. Underwood v. McDuffee, 15 Mich. 361, 93 Am. D. 194; 3 Am. Jur., Arbitration and Award, p. 916, § 85. Judges are in duty bound to apply the applicable rule of law in deciding cases. Because an arbitrator derives his powers from the parties and not from the law of the land and because that power includes that of deciding the law as well as the facts, "He may do what no other judge has a right to do; he may intentionally decide contrary to law and still have his judgment stand." Leslie v. Leslie, 50 N. J. Eq. 103, 107, 24 A. 319, 320, *supra*. While arbitrators are not judges, they act in a quasi judicial capacity and are for the occasion judges as between the parties. McQuaid Market House Co. v. Home Ins. Co. 147 Minn. 254, 180 N. W. 97.

Finality of decision is one of the objects of arbitration. "They [arbitrators] are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that, after resorting to such private tribunals, either party may repudiate their action, and fall back on the courts." Brush v. Fisher, 70 Mich. 469, 472, 38 N. W. 446, 448, 14 A. S. R. 510, 512. In the absence of statute, as here, the decisions of common-law arbitrators are not subject to judicial review and supervision. Goodwin v. Yarbrough, 1 Stew. (Ala.) 152.

While an award of arbitrators is not subject to judicial review and revision, it is subject to impeachment for fraud, mistake, mis-

conduct, and disregard of duty on the part of the arbitrators. Here there is no *direct* evidence of any fact vitiating the award. It is claimed that such error has been shown that an *inference* is compelled that the arbitrators acted with prejudice and bias and not in the exercise of a fair and impartial judgment. Where it is sought to impeach an award on the ground that the arbitrators have reached a wrong conclusion, it is incumbent on plaintiff to show clearly that this conclusion is so at variance with any conclusion which legitimately can be drawn from the facts and evidence before the arbitrators as to imply bad faith or a failure to exercise an honest judgment on their part. Larson v. Nygaard, 148 Minn. 104, 180 N. W. 1002. Perhaps, as Mr. Justice Stone pointed out in Kaufman Jewelry Co. v. Insurance Co. 172 Minn. 314, 318, 215 N. W. 65, 67, 431, our terminology is unfortunate, and it would be more accurate to deal with cases of this kind as involving "fundamental error" rather than fraud, but we need not decide that question now. But a court will not set aside an award simply because it thinks that the arbitrators erred, either as to the law or the facts. Goddard v. King, 40 Minn. 164, 41 N. W. 659, *supra;* Daniels v. Willis, 7 Minn. 295 (374), *supra.* In Goddard v. King we said (40 Minn. 168, 41 N. W. 661) : "The result was an erroneous decision, but it was one the risk of which the parties took when they agreed to submit the matter to their [arbitrators] decision; * * *." In the final analysis, the award must stand and the decision of the court below must be reversed if there is any reasonable basis for the award in the proceedings and evidence had before the arbitrators.

Where an award is unsuccessfully impeached, it conclusively determines the rights of the parties as effectually as a judgment of a regular court. As to all matters of law and fact submitted to the arbitrators, the award is conclusive upon the ground "that the matter has been adjudged by a tribunal which the parties have agreed to make final, and a tribunal of last resort for that controversy; * * *." In re Curtis and Castle Arbitration, 64 Conn. 501, 516, 30 A. 769, 772, 42 A. S. R. 200, 208; accord, 3 Am. Jur., Arbi-

tration and Award, p. 951, § 130. The award operates as a bar to readjudication by the court of issues determined by the arbitrators. United States v. Gleason, 175 U. S. 588, 20 S. Ct. 228, 44 L. ed. 284.

■ The award in the instant case finds reasonable support in the proceedings and evidence before the arbitrators and the processes by which they reached their decision.

(a) The determination that the contractor was not obligated to procure filling from outside the premises to make up the deficiency of dirt in the cut in the hillside can be sustained under the rules of law in similar cases. Construction of the contract was an incident of decision by the arbitrators. Wabash Ry. Co. v. American R. T. Co. (8 Cir.) 7 F. (2d) 335. Determining that the word "materials" was used in the contract according to its well-known meaning among architects, engineers, and in the trade and that according to such usage it did not include procuring dirt filling by a contractor, the arbitrators but applied a well-settled rule that the parties may agree upon the meaning of the contract. White Sewing Machine Co. v. Miller, 66 Minn. 119, 68 N. W. 851, 2 Dunnell, Dig. § 1819. Where, as here, a usage is determinative of the meaning of the terms employed in a contract, the arbitrators may determine what the usage is in order to determine what the contract is. Produce Brokers Co. Ltd. v. Olympia Oil and Cake Co. Ltd. [1916] A. C. 314, Ann. Cas. 1916D, 351.

Furthermore, since the specifications twice provided that the contractor should obtain top filling from the outside but contained no such provision for other filling, it affirmatively appeared that the parties had in mind the matter of getting filling from the outside, and the inference was permissible that by including a provision for the former and not including one for the latter the parties did not intend to obligate the contractor to obtain ordinary filling from the outside. Under the circumstances, the maxim *the expression of one thing is the implied exclusion of others* applies. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393.

(b) The conclusion that the contract must "be considered complete" may well rest upon the *doctrine of practical construction.*

Just what did the contract provide; what performance was required? The contract could not be performed according to its terms, because there was a deficiency of filling on the premises and the contractor was not required to supply the deficiency to make the finished job correspond with the plans. The parties proceeded, nevertheless, with performance. The contractor lowered the level of the field six-tenths of a foot. An assistant architect was present when the stakes for the rough grading were set at the lowered level and, by not objecting and by certifying that the work subsequently done was according to the contract and that any changes were authorized, consented to the lowering of the grade. It is undisputed that plaintiff graded the field as lowered according to the plans and specifications, except for the claim of defendant that there was a deficiency of fill in the corners of the embankment. The assistant architects certified that the rough grading was done according to contract. Upon that supposition, defendant paid plaintiff for it. The deficiency in the embankment resulted solely from doing the work with the materials at hand according to the grades set with defendant's consent. Where, as here, the terms of the contract and the performance required thereunder are ambiguous and the contractor proceeds with the work under the direction or with the consent of the owner or his agent, there is a practical construction of the contract which is binding on the parties. O'Dea v. City of Winona, 41 Minn. 424, 43 N. W. 97 (departures from terms of contract as to height of an embankment in filling and grading a street); Hill v. Duluth City, 57 Minn. 231, 58 N. W. 992. In other respects the contract was performed according to its terms except for the roughness and lack of drainage of the playing field, to which reference will be made later.

(c) The arbitrators allowed plaintiff the balance due as if the contract had been performed according to its terms notwithstanding their finding that the surface of the field was not "in good shape." Of course, as defendant contends, a contractor cannot recover where he is guilty of intentional deviation from the contract or where unintentional deviations are so extensive that the owner

does not get substantially that for which he bargained. Ylijarvi v. Brockphaler, 213 Minn. 385, 7 N. W. (2d) 314. Without so deciding, we shall assume that, if the case had been sued and tried to the court in the first instance, its findings of failure of substantial performance would have to be sustained. But that in itself would not be ground for upsetting the award. The arbitrators had a right to consider the equities of the case. In Fudickar v. Guardian Mut. L. Ins. Co. 62 N. Y. 392, at pp. 400-401 (cited in Goddard v. King, 40 Minn. 164, 168, 41 N. W. 659, 661, *supra*), holding that arbitrators may disregard the strict rules of law or evidence and decide according to their sense of equity, the court used language *arguendo,* which is applicable here, as follows:

"\* \* \* If, for example, a claim for compensation for the erection of a building by one person on the land of another, under a contract which, by technical construction, makes the right to compensation dependent upon full performance by the builder, is referred to arbitration, and it turns out that there has been a failure by the builder to comply with the contract in some particulars, although the benefit which the other party has received from part performance is greater than the injury sustained by the failure to perform the contract in full, the arbitrator may, I think, where the submission is general, award the excess of benefit, although in an action at law upon the contract he could not \* \* \* recover."

The arbitrators were justified in taking the view that the equities were on plaintiff's side. Apparently the defects were slight. Defendant did not show in what amount, if any, it was damaged by plaintiff's failure to grade the field level. The arbitrators found that the defects, other than the one of insufficient drainage provided by the plans, were due to defendant's failure to exercise supervision of the work and to set finish grading stakes. The provisions for supervision of the work and for finishing stakes were for defendant's benefit, to enable it to secure compliance with the specifications while the work was being done. By not availing itself of these benefits, defendant left it to plaintiff to perform as best it

could. Apparently the arbitrators took the view that it was inequitable for defendant, after the work was done, to insist on performance which it might have secured, but did not, during the progress of the work. There is substantial basis in the record for that view. Furthermore, while it was not the basis of the award, it appears that defendant received without paying anything extra therefor the benefit of the excavating, grading, and filling of the 4,104 cubic yards of fill in excess of the amount upon which plaintiff's bid was based. The benefit exceeds the defects.

Our conclusion is that plaintiff is entitled to recover upon the award. Since liability for arbitrators' fees was treated upon the former appeal as a separate question and not involved in this case, decision in the instant case is without prejudice to that question.

Reversed with directions to enter judgment in favor of plaintiff upon the award.

Mr. Justice Loring, absent because of accidental injuries, took no part in the consideration or decision of this case.

