THOMAS P. I. GODDARD and others *vs.* JAMES KING.

February 11, 1889.

**Valuation by Appraisers — Renewal of Lease — Effect of Errors.—** Where, in a lease of real estate, the yearly rent was to be 5 per cent. upon the value of the real estate as appraised by referees chosen by the parties, a great difference between the value so appraised and the value as found by a court or jury is not, of itself, a reason for setting aside the appraisal.

**Same—Arbitration—Error in Award as Evidence of Fraud.—**That an award of arbitrators upon a common-law arbitration is clearly wrong, while it may be evidence entitled to greater or less weight, according to the extent and effect of the apparent error, and the other circumstances of the case, in support of the charge of fraud or partiality on the part of the arbitrators, is not conclusive evidence of it.

**Same—Award based on Error of Law or Erroneous Theory.—**If upon such an arbitration the arbitrators decide the matter honestly and fairly according to their judgments, the award will not be set aside because they decided the facts erroneously, or were mistaken in the law they applied to them, or decided on an erroneous theory.

Appeal by plaintiffs from an order of the district court for Ramsey county, *Brill,* J., presiding, refusing a new trial after a trial by the court. The valuation made by the appraisers was $30,000. The court found the property to have been worth $50,000 at the date of the valuation.

*McMillan & Beals,* for appellants.

*O'Brien & O'Brien* and *Chas. E. & A. G. Otis,* for respondent.

GILFILLAN, C. J. The plaintiffs leased, September 28, 1881, to the defendant, certain land in the city of St. Paul for the term of 40 years from that date, at the yearly rent of $1,000 for the first five years; for the second and for each succeeding period of five years (if the parties should not be able to agree on the yearly rent) the yearly rent, it was agreed, should be fixed by two referees,—one to be chosen by each of the parties,—and, if the two referees could not agree, they were to choose a third, and the award of any two of the three referees was to be binding and conclusive between the parties. It was agreed that to fix the amount of rent the referees should first appraise the value of the premises exclusive of improvements made by defendant, and should take 5 per cent. of such appraised value as the yearly rent of the premises for the ensuing five years. The first period of five years having expired, the parties selected each a referee, and the two, not being able to agree concerning the rent, selected a third, and two of the referees made an award (the other refusing to sign it) in which they appraised the value of the property at $30,000, and fixed the rent at $1,500 per year for the second five years. The award is certainly regular upon its face. The action is to set aside the award. Several grounds on which it is claimed it should be set aside are set forth in the complaint. Except as touching one of these, the allegations of fact are negatived by the court below in its findings. One of them is alleged thus: "And neither of said arbitrators in so making said award in fact ever appraised or undertook or attempted to appraise the value of said real estate, exclusive of buildings, but in and by their said award sought to and did fix a low rent for said term, and less than that called for by said lease, to and for the sole advantage of said defendant, and for the purpose of giving such advantage to said defendant, and in fraud of the rights of plaintiffs under said lease." This is the only allegation in the complaint amounting to anything like a charge of fraud on the part of the arbitrators, or even to an allegation that they made a mistake of fact or law. The only finding of fact that can be referred to in support of this allegation is that the value of the real estate on September 28, 1886, the date as to which the value was to be appraised, was $50,000, exclusive of the buildings. The difference be-

tween the value as appraised by the referees and as found by the court, though great, is not, of itself, a reason for setting aside the award. That award is presumed, unless fraud or mistake is shown, to be the result of the honest exercise of their judgment by the referees. The court, in its findings, negatives any allegations of fraud or mistake, if the complaint may be construed to make any. The parties bound themselves to abide by the judgment of the referees. The award upon such a reference (it being equivalent to a common-law arbitration) cannot be avoided on the ground merely that the decision of the referees is erroneous. And on the facts as found the most that can be said against the award is that the referees erred in their opinion as to the value.

But the appellants claim that the court below erred "in finding the allegations of fraud upon the part of the two referees making the award, as charged in the complaint, not to be true." The only evidence aside from the award itself, and that as to the actual value of the land, that can be referred to in support of this assignment of error is as to what took place between the referees when they were met to make the appraisal. One of them at that time stated that he considered the proper basis upon which to make the appraisal was to take its value for the purposes for which the defendant was using it. Another of them stated that he considered the valuation provided for in the lease to be the value of the land with such a lease as the defendant had resting upon it. And each of these two formed, as is apparent, his judgment of the value upon the theory or basis suggested by him, and the two agreed as to the valuation, and signed the award. The third referee did not agree with either of the others as to the basis upon which the value ought to be estimated, or as to the amount, and he did not sign the award. The two who did sign it were each of them wrong in the basis or theory on which he estimated the value. The fact that under the lease the defendant might use the land for a particular purpose, or that he was restricted by it to a particular use, and the fact that plaintiffs had given defendant a long lease of the land, had nothing whatever to do with its value as between them, under the lease; for the valuation was not to be made for the purpose of a sale of the land, thus incumbered, by one to the

other. The referees ought to have estimated the market value of the land as it would have been with the lease and improvements made by the lessee off.

Where there is a charge of fraud or partiality made against an award, the fact that it is plainly and palpably wrong would be evidence in support of the charge entitled to greater or less weight, according to the extent and effect of the error and the other circumstances of the case. There might be a case of error in the award so plain and gross, and its effect might be such, that a court or jury could arrive only at the conclusion that it was not the result of an honest, impartial exercise of their judgment by the arbitrators. Such is not this case. On a matter so unstable as the value of real estate the difference between the estimate of its value by arbitrators, and its value in the opinions of witnesses, would have to be very great indeed—greater than it is in this case—to require a conclusion that the former is purposely wrong. And there is nothing in the evidence to suggest that either of the two referees did not honestly believe that the theory suggested by him as the basis of valuation was the correct one. The finding complained of was justified by the evidence. Had it been necessary for the court to find as a fact that the referees did or did not err in their appraisal, the evidence would have required a finding in the affirmative. But it was not necessary to make a finding on that, unless the error was such as would justify a court in setting aside an award.

Where the parties have by their agreement made the arbitrators judges between them of the law and the fact, they are bound by the decision, if fairly and honestly made, even though the arbitrators have erred in their conclusions of fact, or in the law which they have applied to them. As said by this court in *Daniels* v. *Willis*, 7 Minn. 295, (374:) "If every award must be made conformable to what would have been the judgment of this court in the case, it would render arbitrations useless and vexatious, and a source of great litigation." "They [the courts] have only looked to see if the proceedings were honestly and fairly conducted, and, if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators." The cases of mistake on the part of ar-

bitrators for which the award will be set aside are where through some mistake they have not applied the rules which they intended to apply to the decision of the case, so that upon their own theory a ·mistake was made which caused the result to be different from what they had reached by their reason and judgment. *Davis* v. *Henry,* 121 Mass. 150; *Ellicott* v. *Coffin,* 106 Mass. 365; *Carter* v. *Carter,* 109 Mass. 306; *Boston Water Power Co.* v. *Gray,* 6 Met. 131; *York & Cumberland R. Co.* v. *Myers,* 18 How. 246; *Fudickar* v. *Guardian Mut. Life Ins. Co.,* 62 N. Y. 392. Where that is the case, the award as made is not (by reason of the mistake) what the arbitrators really intended. Such was not the case here. The referees, it is true, adopted a wrong theory for arriving at the valuation, but they applied it to the decision of the matter before them. The result was an erroneous decision, but it was one the risk of which the parties took when they agreed to submit the matter to their decision; and, the referees having acted honestly, their award must stand.

Order affirmed.