BENJAMIN E. FISCHER AND OTHERS v.
GUARANTEED CONCRETE COMPANY,
A SUBSIDIARY OF J. F. SHIELY COMPANY.

151 N. W. (2d) 266.

May 19, 1967—No. 40,306.

*Howard, LeFevere, Lefler & Hamilton,* for appellants.

*Felhaber, Larson, Fenlon & Vogt, Thomas M. Vogt,* and *Charles F. Bisanz,* for respondent.

*Robins, Davis & Lyons, Solly Robins,* and *Stanford Robins,* for General Drivers, Helpers, etc., Local Union No. 120, amicus curiae.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying plaintiffs a temporary injunction and from summary judgment entered in favor of defendant.

Plaintiffs were formerly employed by the Corning-Donohue Company as drivers of its ready-mix concrete trucks. In May 1965 Corning sold its mixing plant and trucks of its ready-mix concrete division to defendant, Guaranteed Concrete Company (a subsidiary of J. F. Shiely Co.). Before the sale, 23 truckdrivers were employed by Guaranteed and 13 by Corning. After the sale, plaintiffs, the former Corning employees, were hired by Guaranteed but were placed at the bottom of its seniority list. All of the employees were and now are members of General Drivers, Helpers and Truck Terminal Employees Local Union No. 120, which union had negotiated a collective bargaining agreement with both Corning and Guaranteed and was the bargaining representative of the truckdrivers of both companies.

Because they were placed at the bottom of the seniority list, plaintiffs filed a grievance pursuant to Article II of the collective bargaining agreement. They claim that this was done on the advice of agents of

the union, who told them that Guaranteed should "dovetail"[1] the seniority lists of the two companies; and that subsequently, Benjamin E. Fischer and Joseph A. Corrigan, two of the plaintiffs, were notified to appear at a hearing August 13, 1965, at which time the grievance would be heard by an arbitrator and the union would have its attorney presenting the case in behalf of plaintiffs. At the hearing the union presented plaintiffs' grievance, but took a neutral position with reference to resolution of the issue. Up to that time, plaintiffs claim, they had no understanding that the union would not present their arguments for dovetailing.

The arbitrator in his award, dated August 27, 1965, found that, with the exception of one Corning employee—its general manager—no agreement was made with respect to retention of Corning's employees by Guaranteed and that the arbitrator was therefore compelled to deny the grievance. He noted that there was no dispute as to the fact that Corning had disposed of its ready-mix business completely, but rejected plaintiffs' claim that for that reason Article III, section 10, of the collective bargaining agreement required Guaranteed to dovetail the seniority lists of the two companies. This section reads in part:

"This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof."

The arbitrator found that the contract contained no other provision relating to a sale of a business which would shed light on the intent of the parties at the time the agreement was reached. He also said:

"In the light of all facts brought out at the hearing, together with a study of the agreements, including the collective bargaining agree-

---

[1] I. e., to integrate the seniority lists of the two firms so that seniority of former Corning employees would be preserved in their new employment with Guaranteed.

ment, the arbiter is compelled to give strict construction to the pertinent provision of the labor agreement, and under the circumstances is compelled to deny the grievance. * * *

* * * * *

"Unless specifically provided for within the terms of the collective bargaining agreement, the arbiter is of the opinion that the interpretation asked for within the grievance cannot be reached, and cannot be read into Article 3, section 10."

After this award was issued, plaintiffs commenced an action in district court which, according to plaintiffs, was in the nature of an action to enforce the collective bargaining agreement existing between Guaranteed and Local 120; to require Guaranteed to abide by those sections of the agreement dealing with seniority; and to enjoin enforcement of the arbitration award. Their position is that their seniority should date back to the date each was originally employed by Corning. On the other hand, Guaranteed's position is that the seniority of each plaintiff began on or about May 7, 1965, the date it purchased Corning's ready-mix operation. Following a hearing on a motion by plaintiffs for a temporary injunction and a motion by Guaranteed for summary judgment, the district court issued an order January 26, 1966, denying plaintiffs' motion and granting Guaranteed's. This appeal followed.

Plaintiffs contend that the award was based on an erroneous construction of the bargaining agreement. In a memorandum made part of its order, the court held that plaintiffs' right to vacate the award must be measured by Minnesota law, and particularly Minn. St. 572.19, which sets out the grounds on which an arbitration award may be vacated and covers the right to secure judicial relief. The trial court determined that none of the language contained therein gave plaintiffs judicial standing in this action.

Plaintiffs argue, however, that Minn. St. c. 572 spells out the procedures that *parties* to an arbitration must follow in having matters heard and decided; that they are not "parties" and therefore are in no position to put those sections of the law into operation; that their

cause of action is based on the enforcement of a collective bargaining agreement, making it a Federal question, the assertion of which should not be defeated by any state law to the contrary.

It is well established that actions brought to enforce collective bargaining agreements are governed by § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 USCA, § 185(a), and that the controlling substantive law is Federal law. Humphrey v. Moore, 375 U. S. 335, 84 S. Ct. 363, 11 L. ed. (2d) 370. It also appears that state law, if compatible with the purposes of § 301, may be resorted to in order to find the rule that will best effectuate the Federal policy. Textile Workers Union v. Lincoln Mills, 353 U. S. 448, 77 S. Ct. 912, 1 L. ed. (2d) 972.

It is our opinion that the issues in this case are governed by both the applicable Federal law and compatible Minnesota statutes and decisions. Teamsters Local v. Lucas Flour Co. 369 U. S. 95, 82 S. Ct. 571, 7 L. ed. (2d) 593.

With respect to judicial review and enforcement of arbitration awards, the United States Supreme Court held, in United Steelworkers v. Enterprise Wheel & Car Corp. 363 U. S. 593, 80 S. Ct. 1358, 4 L. ed. (2d) 1424, that the question of interpretation of a collective bargaining agreement is one for the arbitrator; that it would undermine the Federal policy of settling labor disputes by arbitration if courts had the final say on the merits of the awards; and that so far as the arbitrator's decision concerns construction of the contract (363 U. S. 599, 80 S. Ct. 1362, 4 L. ed. [2d] 1429) "the courts have no business overruling him because their interpretation of the contract is different from his."

In United Steelworkers v. American Mfg. Co. 363 U. S. 564, 80 S. Ct. 1343, 4 L. ed. (2d) 1403, it was held that the function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator; that the duty of the court is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract; and that the question of whether the moving party is right or wrong is one of contract interpretation for the arbitrator. See, also, United

Steelworkers v. Warrior & Gulf Navigation Co. 363 U. S. 574, 80 S. Ct. 1347, 4 L. ed. (2d) 1409.

It is our opinion that our statutes and the decisions of this court are consistent with the above cited cases. In Cournoyer v. American Television & Radio Co. 249 Minn. 577, 83 N. W. (2d) 409, we said that, in passing on the issue of whether the award of an arbitrator may be set aside as invalid because of alleged misinterpretation of controlling contract provisions, the general rule is that an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract. We said also that his award will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or any other disregard of duty. We pointed out that an award will not be set aside merely because the court thinks the arbitrator erred as to either the law or the facts.

In this case we agree with the trial court's conclusion that no sufficient basis existed for granting injunctive relief on plaintiffs' claim that the arbitration award was the result of an erroneous construction of the agreement.

■ Plaintiffs' second claim is that they were denied fair representation by the union. Since their action was brought under § 301 of the Labor Management Relations Act, 1947, Federal law again is controlling even though the action is brought in a state court. Humphrey v. Moore, 375 U. S. 335, 84 S. Ct. 363, 11 L. ed. (2d) 370.

The trial court, when presented with this claim, reviewed the procedural record and determined that the arbitrator was presented the conflicting claims of the parties and the relevant facts pertaining to those claims; that at least some of the plaintiffs were present at the hearing; and "that the arbitrator was apprised of their common views and the basis for them. When the contentions of the rival groups of the employees had been fully presented, the union adopted a neutral position, favoring neither group over the other." The court determined that there was no basis, on the record, to conclude that there had been a denial of plaintiffs' right of fair representation by the un-

ion, and that Humphrey v. Moore, *supra* (relied upon by both parties), does not support plaintiffs' claim.

In Humphrey, the court considered the duty of fair representation incumbent upon a collective bargaining representative in the context of conflicting seniority claims by employees whom it represented. It was held there that the duty is to act honestly and in good faith, in the best interests of all those represented, without hostility to any of the parties it represents; also, that the unions' duty is not breached if it takes a good-faith position contrary to that of some individuals whom it represents or supports the position of one group of employees against another. In Humphrey, an employee of Dealers Transport Company, an automobile transporting concern serving the Ford Motor Company assembly plant in Louisville, brought a class action in a Kentucky state court on behalf of himself and other employees similarly situated to enjoin the enforcement by General Drivers, Warehousemen and Helpers, Local Union No. 89, and Dealers of a decision of an industry-union dispute adjustment panel. Due to business conditions in Louisville, Dealers had entered into a transaction with another automobile transport company (E & L Transport Company) also servicing the Ford plant in Louisville, whereby an exchange of certain equipment and franchises was made. The exchange had the effect of leaving Dealers the only company servicing the Louisville Ford plant. Local 89 represented the employees of both E & L and Dealers.

When layoffs resulting from the exchange began at E & L, three E & L employees filed grievances claiming that the seniority lists of E & L and Dealers should be dovetailed so that E & L drivers hired by Dealers would enjoy their former seniority rights. The president of the union assured the Dealers employees when the grievance was filed that the E & L employees would not prevail. Pursuant to the collective bargaining agreement the grievances were submitted directly to the local joint committee, where the union and the employer had equal votes. Following a deadlock in that committee, the matter was ultimately submitted to the Joint Conference Committee in Detroit. Immediately prior to the opening of the Joint Conference Committee

hearing, the union advised three shop stewards who were present as representatives of Dealers' employees that the union had decided to recommend to the Joint Conference Committee that the seniority lists be dovetailed. The hearing was held and the Joint Conference Committee decided to dovetail the lists.

The action was then brought on behalf of Dealers' employees charging the union with misleading them by means of the union president's earlier assurances that the E & L employees would not prevail; that the union president had left plaintiffs without representation before the Joint Conference Committee; and that the decision of the Committee was arbitrary and capricious, contrary to past practice in the industry, and violative of the collective bargaining contract.

The United States Supreme Court, on writ of certiorari to the Kentucky Court of Appeals, which had decided in favor of the plaintiffs, held that no breach of the union's duty of fair representation had been shown. In addition to saying that the duty of fair representation had not been breached, the court stated that where employees have notice of the hearing, where the issue is clear and narrow, and where the facts are not substantially in dispute, the union does not breach its duty of fair representation when it does not remain partisan to one single group. Nor did the court find a breach of the union's duty by its taking a position contrary to one set of grievants at the time of hearing without prior notice. The theory of the suit was that the action by the union had left Dealers' employees without representation, and in reaching its decision the Supreme Court appears to have rejected the argument advanced by plaintiffs here, when it held that the collective bargaining agent had not breached its duty of fair representation in taking a good-faith position contrary to that of some individuals it represented; nor was there a breach in supporting the position of one group of employees against that of another.

Plaintiffs in their argument in the case before us do not overlook the fact that in Humphrey the court declined to find the union to have breached the duty of fair representation. They claim, however, that there were some important distinguishing factors there—that there is a vast difference between advocacy of only one position when in-

tegration of seniority is urged and all parties are treated equitably, and such advocacy when one set of employees is relegated to the bottom of the seniority list; also, that the drivers in Humphrey were given notice not only of the date of the hearing but also of the position the union intended to take, whereas in the instant case, according to plaintiffs, they were notified of the hearing date but were at no time informed of the position the union intended to take at such hearing.

A review of the findings of the arbitrator in the case before us satisfies us that he was fully apprised of the facts in the matter before him and that plaintiffs were represented by at least two of their number. There is nothing in the record to show that they attempted to present additional information, nor did they request a continuance until they could secure further representation. Neither is there any showing that after the hearing plaintiffs made any attempt to make an additional presentation of facts or argument to the arbitrator through counsel or otherwise. Under the circumstances we agree with the trial court that Humphrey requires us to reject plaintiffs' argument that they were deprived of their right of fair representation.

The principles of law established in Humphrey have been applied in Federal courts in cases involving the consolidation of trucking companies and the resulting conflict of seniority rights. Bieski v. Eastern Auto. Forwarding Co. (D. Del.) 231 F. Supp. 710, involves a fact situation very similar to the one before us. In that case one common carrier was purchased by another. The drivers of both companies were represented by the same union. Pending a determination of the seniority rights by a joint committee it was suggested by the purchasing company and the union's business agent that the seniority problem be temporarily resolved by dovetailing the seniority lists of the two companies. This proposal was rejected by employees of the purchaser. At the hearing before the joint committee the businesss agent of the union explained the purchase transaction leading up to the grievance and other relevant facts but did not take any position with respect to settling the seniority dispute. The joint committee decided that the acquiring company had no obligation to recognize the

seniority rights of the employees of the acquired company. An action was then commenced by employees of the acquired company charging both the acquiring company and the union with dishonesty and alleging that the union had breached its duty of fair representation by assuming a position of neutrality at the hearing. In denying a motion for a temporary injunction, the court stated (231 F. Supp. 716):

"* * * A neutral stand by the Union is not inconsistent with the Union's duty of fair representation. Whether the Union espouses the cause of one group of employees or remains neutral, its duty is the same. It must honestly and fairly present the facts to the Committee, so that the Committee can arrive at the best solution.

\* \* \* \* \*

"The Union has not breached its duty of fair representation by taking a neutral position or by any other action. There is no evidence that the Union did not endeavor to present the relevant facts to the Committee to aid in its determination."

The United States Court of Appeals affirmed the district court's denial of a temporary injunction. Bieski v. Eastern Auto. Forwarding Co. (3 Cir.) 354 F. (2d) 414. See, also, Zeaner v. Highway Truck Drivers & Helpers Local 107 (E. D. Pa.) 234 F. Supp. 901; Ford Motor Co. v. Huffman, 345 U. S. 330, 73 S. Ct. 681, 97 L. ed. 1048.

Plaintiffs further contend that the arbitration award was a "nullity" as to them. That argument is based on the premise that they were not fairly represented at the arbitration hearing, a claim which has been decided adversely to them. The cases plaintiffs cite in support of this argument therefore require no comment, but it is apparent that the fact situations therein were different from the facts of this case.

We have considered other issues raised by the plaintiffs in connection with whether the trial court erred in granting summary judgment to Guaranteed. It is our opinion that the trial court's ruling was correct. We have also reviewed plaintiffs' letter addressed to the court subsequent to the oral argument and recognize the sincerity of plaintiffs' attorney in his desire to further inform the court and assist in clarifying certain questions raised from the bench on oral argument.

We have reviewed John Wiley & Sons, Inc. v. Livingston, 376 U. S. 543, 84 S. Ct. 909, 11 L. ed. (2d) 898, and United Steelworkers v. Reliance Universal Inc. (3 Cir.) 335 F. (2d) 891, cited in the letter, but do not consider them in point inasmuch as the relief sought in those cases was primarily the right to arbitrate, which was not the situation here.

We conclude that the record in its entirety justifies an affirmance. Affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.