ERIC A. CARLSTROM CONSTRUCTION COMPANY, Appellant-Respondent,

v.

INDEPENDENT SCHOOL DISTRICT NO. 77, Respondent-Appellant,

Hoffman Electric Company, Respondent,

Midwest Mechanical Services, Inc., Respondent,

Commercial Arbitration Tribunal, Respondent,

Tessier Sheet Metal Corporation, Respondent.

Nos. 46539 and 46550.

Supreme Court of Minnesota.

July 1, 1977.

K. M. Krost, Mankato, for Carlstrom Const. Co.

McLean, Peterson, Sullivan & Haugh and E. D. McLean, Mankato, for Ind. Sch. Dist. # 77.

Moore, Costello & Hart and Patrick A. Leighton and Larry A. Hanson, St. Paul, for Hoffman Elec.

Altman, Geraghty, Mulally & Weiss and Terence O'Loughlin and James R. Gowling, St. Paul, for Midwest Mech. Serv.

Hvass, Weisman & King and Russell F. Pannier, Minneapolis, for Tessier Sheet Metal.

MacLAUGHLIN, Justice.

Plaintiff, Eric A. Carlstrom Construction Company (Carlstrom), and defendant, Independent School District No. 77 (School District), appeal from the district court's confirmation of arbitration awards arising from contracts for the construction of Mankato East High School. For the reasons stated herein, we affirm.

In April 1971, the School District entered into four separate prime contracts in connection with the construction of a new high school: (1) with the general contractor, Carlstrom; (2) with an electrical contractor, Hoffman Electric Company of Minneapolis (Hoffman); (3) with a plumbing and heating contractor, Midwest Mechanical Services, Inc. (Midwest); and (4) with a contrac-

tor for the performance of ventilation services, Tessier Sheet Metal Works, Inc. (Tessier). The School District chose to enter into a separate agreement with each of the prime contractors rather than into a single contract with the general contractor who, in turn, would have let subcontracts for the other services.

The general terms and conditions of each of the four standard American Institute of Architects contracts were identical. Section 7.10.1 of each contract provided that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, * * * shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise." This section further provided that "[t]he award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

On December 12, 1973, after construction of the new high school had been completed, Hoffman demanded arbitration proceedings against the School District pursuant to the arbitration provision of its contract with the School District. Hoffman charged that Carlstrom had failed to enclose certain parts of the building and that as a result, Hoffman had not been able to complete its work according to schedule. Hoffman sought compensation from the School District because of the extra cost of completion caused by Carlstrom's delay. The theory of Hoffman's claim was that the School District had the responsibility to assure that there was no delay on Carlstrom's part which would cause loss to Hoffman.

Shortly thereafter, Midwest and Tessier filed demands for arbitration of their claims for compensation from the School District, again based on extra costs caused by Carlstrom's delay. The School District then asserted a claim for indemnification against Carlstrom pursuant to section 4.18.1 of the contract, which stated in part:

"The Contractor shall indemnify and hold harmless the Owner * * * from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense * * is caused in whole or in part by any negligent act or omission of the Contractor * * *."

Carlstrom brought this action for declaratory judgment and sought to enjoin the arbitration proceedings, claiming that the issues were not arbitrable. After a hearing, the district court retained jurisdiction but ordered that the parties proceed with arbitration as provided by the contracts. The separate arbitration proceedings were consolidated as a matter of convenience and a joint hearing was held before a Commercial Arbitration Tribunal (Tribunal). The Tribunal, which was composed of three arbitrators, all of whom were attorneys, heard testimony from all of the parties and made the following written award:

"INDEPENDENT SCHOOL DISTRICT # 77, hereinafter referred to as SCHOOL, shall pay to HOFFMAN ELECTRIC COMPANY OF MINNEAPOLIS, hereinafter referred to as HOFFMAN, the sum of SEVENTY EIGHT THOUSAND DOLLARS ($78,000.00).

"SCHOOL shall pay to MIDWEST MECHANICAL SERVICES, INC. the sum of ELEVEN THOUSAND DOLLARS ($11,000.00).

"SCHOOL shall pay to. TESSIER SHEET METAL WORKS, INC. the sum of TWENTY–SIX THOUSAND DOLLARS ($26,000.00).

"ERIC A CARLSTROM CONSTRUCTION CO. shall pay to SCHOOL the sum of SEVENTY THREE THOUSAND FIVE HUNDRED THIRTEEN DOLLARS AND TWENTY–EIGHT CENTS ($73,513.28).

"The administrative fees and expenses of the American Arbitration Association shall be borne equally among the five parties and paid as directed by the Association.

"The compensation for the Arbitrators shall be borne equally among the five parties and paid as directed by the Association."

"This AWARD is in full settlement of all claims submitted to this arbitration."

Subsequently, Hoffman, Midwest, and Tessier moved the district court for an order confirming the Tribunal's awards pursuant to Minn.St. 572.18, and for judgment in accordance therewith. Carlstrom and the School District moved the district court to vacate, modify, or amend the awards, claiming error in the Tribunal's decision. The district court referred the matter to the Tribunal for further consideration, specifically asking why the Tribunal had awarded the School District only partial indemnification from Carlstrom for those amounts which had been awarded to Hoffman, Midwest, and Tessier from the School District.

The Tribunal provided the information requested, explaining its basis for determining that the School District was not entitled to full indemnification from Carlstrom:

"1) The last phrase of the language quoted in the contract reads: 'Any costs caused by defective or ill timed work shall be borne by the party responsible therefore.' The School District was a party to all four contracts and was responsible for part of its own damages and part of the delay and damages caused to the other general contractors. This was because it failed properly to enforce the terms of its contract and the rights accorded to it by the custom and usage of the trade to coordinate the work of the four general contractors in order to mitigate the damages of any of the parties and to avoid foreseeable delays. The School District is one of the parties responsible for its own damages and is not entitled to full indemnity under the terms of the contract.

"2) Despite the fact that the School District claimed it had no control over the time scheduling of the four general contractors, there is ample evidence that it did indeed have the right and the obligation to coordinate the performance of the four contractors when their respective performances came in conflict with one another. There are certain terms in the respective contracts of the parties which might indicate otherwise, but there are other areas of the contracts which confirm this conclusion of the arbitrators. Expert witnesses testified that well established custom and usage of the trade allow an owner to coordinate his contractors under circumstances such as were present in this instance.

"3) The School District did in fact, through its agent, the architect, make some efforts to coordinate the contractors in this case. The record of the arbitration hearing is replete with instances where letters were written by the contractors to the architect, as agent for the owner, requesting coordination among the respective contractors. In response the architect arranged meetings (which were called coordinating meetings) and made some unsuccessful attempts to coordinate the contractors. This was a recognition by the School District and its agent of their right and responsibility to coordinate what had obviously deteriorated to a very bad cooperation situation among the contractors. Having undertaken to do so, pursuant to the terms of the contract and the custom and usage of the trade, they did so in a negligent and ineffective way. This served to charge them with part of the responsibility for the long delays and extra costs involved due to the failure of the four general contractors to coordinate their work with one another."

In light of the Tribunal's explanation, the district court confirmed the awards and ordered judgment entered thereon. After denial of motions to amend the order, Carlstrom and the School District appealed.

The sole issue to be considered by this court is whether the trial court erred in refusing to vacate or modify the Tribunal's awards. Appellants contend that the trial court should have vacated the awards pursuant to Minn.St. 572.19, subd. 1(3), because the Tribunal exceeded its powers. They

also assert that the district court should have modified or amended the awards pursuant to Minn.St. 572.20, subd. 1(2), since the Tribunal made awards upon matters not submitted to them.

■ The contracts themselves provide that they shall be governed by the law of the place where the project is located. Under Minnesota law, an arbitrator is the final judge of both law and fact in the absence of fraud or bad faith. See, *Goddard v. King,* 40 Minn. 164, 41 N.W. 659 (1889); *Fischer v. Guaranteed Concrete Co.,* 276 Minn. 510, 150 N.W.2d 266 (1967); *Milwaukee Mut. Ins. Co. v. Currier,* Minn., 245 N.W.2d 248 (1976). The Uniform Arbitration Act, adopted by this state in 1957, provides that " * * * the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Minn.St. 572.19, subd. 1.

■ One of the fundamental objectives of the arbitration act is to encourage and facilitate the settlement of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions. Even though resort to the courts is authorized, the basic intent of the act is to discourage litigation and to foster voluntary resolution of disputes in a forum created and controlled by the written agreement of the contracting parties. Thus, the parties by their language may comprehensively provide, as they have in the instant case, that all disputes, whether arising under the terms of the contract or growing out of their relationship, may be referable to arbitration. *Dunshee v. State Farm Mutual Auto. Ins. Co.,* 303 Minn. 473, 228 N.W.2d 567 (1975); *Layne-Minnesota Co. v. Regents of the University,* 266 Minn. 284, 123 N.W.2d 371 (1963).

In *Cournoyer v. American Television & Radio Co.,* 249 Minn. 577, 83 N.W.2d 409 (1957), we held that an arbitrator, in the absence of an agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract, unless there is fraud,

mistake in applying his own theory, misconduct, or disregard of duty. See, also, *Fischer v. Guaranteed Concrete Co., supra.* Thus, the standard to be applied in reviewing arbitration awards is a narrow one and was set forth conclusively in *Grudem Brothers Co. v. Great Western Piping Corp.,* 297 Minn. 313, 316, 213 N.W.2d 920, 922 (1973), as follows:

"The arbitrators make the final determination of all questions submitted to them whether legal or factual. The court will not overturn these conclusions even if it believes the arbitrators made an incorrect conclusion. If arbitrators' decisions were subject to reconsideration by the courts, arbitration proceedings would work merely to delay final decisions of controversies rather than bring them to speedy resolution."

■ Even though this limited scope of review would not allow setting aside the Tribunal's awards in the absence of fraud, mistake, or bad faith, and none is alleged in the instant case, we have carefully reviewed the record and find the Tribunal's interpretation of the controlling contract provisions altogether reasonable and proper. The School District's plans and specifications, drawn by its agent-architect, were used by Hoffman, Midwest, and Tessier in making estimates and bidding for the work to be done in construction of the new high school. The specifications of the contracts provided:

"It is the intent of the contract that the following areas be completed to a weathertight condition by December 1971: Areas 1–2–3–4–5–6–8–9–15–16 and 17, and connecting tunnels.

\* \* \* \* \* \*

"g. Time Limits mentioned above are definitely of the essence of the contract."

As general contractor, Carlstrom was responsible for enclosing the specified areas of the building by December 1971. It was undisputed that these areas were not made weathertight by that date and at least one area was not finally enclosed until almost 8 months later. Without enclosure of these

areas, Hoffman, Midwest, and Tessier could not perform the work pursuant to their contracts with the School District during a Minnesota winter and were subjected to delays which increased the cost of their performance.

In *McCree & Company v. State*, 253 Minn. 295, 91 N.W.2d 713 (1958), we held that the act of the owner in furnishing the plans and specifications amounts to a warranty of their fitness and explained:

" * * * [W]here one party furnishes specifications and plans for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purposes implicit therein and whether the builder has been damaged in proceeding with the work in reliance on such an implied warranty or whether he was damaged in relying on the warranty in making his bid, he may recover." 253 Minn. 311, 91 N.W.2d 724.

Further, we stated in *Alley Construction Co., Inc. v. State*, 300 Minn. 346, 219 N.W.2d 922 (1974), that even where a contractor does not present direct evidence that plans and specifications were relied upon in bidding a job, such reliance may be inferred from the facts and circumstances surrounding the award of the contract. Hoffman, Midwest, and Tessier adequately demonstrated to the Tribunal that they had been damaged by reasonable reliance on the plans and specifications furnished by the School District and that they had been unable to perform their contractual obligations by reason of Carlstrom's failure to enclose the specified areas by December 1971.

Moreover, the School District was not excused from its promise to have the specified areas enclosed by December 1971 merely because the failure to enclose was due to Carlstrom's delay. In *St. Paul Dredging Co. v. State*, 259 Minn. 398, 107 N.W.2d 717 (1961), contract specifications required the defendant to furnish a worksite free from utility poles but most of the poles remained on the site throughout the time for construction and interfered substantially with the plaintiff's work. We allowed recovery by the plaintiff even though the delay was attributable to the failure of the utility companies to comply with the defendant's request for removal and said:

"It would follow that defendant became liable for plaintiff's damages arising out of defendant's failure to clear the worksite of obstructions even though such failure was not due to a lack of reasonable effort on its part to avoid such a default, or was due to the failure of the utility companies to comply with defendant's requests that the poles be removed. *It is well settled that a promise which cannot be performed without the consent or cooperation of a third party is not excused because of the promisor's inability to obtain such cooperation.*" (Emphasis supplied.) 259 Minn. 407, 107 N.W.2d 723.

See, also, Annotation, 84 A.L.R.2d 12, 29; 17 Am.Jur.2d, Contracts, § 416.

The School District's failure to have the areas enclosed as warranted was a material breach of the contract. 6 Williston, Contracts (3 ed.) § 846. Evidence amply demonstrated that Hoffman, Midwest, and Tessier were damaged by the delay and the Tribunal properly awarded damages to these defendants from the School District.

The School District also contends that the Tribunal's award of partial rather than full indemnification from Carlstrom was based on evidence of custom and usage in the construction industry and that such evidence is not admissible where its purpose is to contradict, vary, or qualify plain and unambiguous terms of an agreement. Section 4.3.1 of each prime contract provided:

"The Contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract."

The School District argues that this express term was disregarded and that the Tribunal improperly allowed consideration of custom and usage in reaching its conclusion that

the School District had a right and responsibility to act upon the dilatory performance of Carlstrom and to coordinate the work of the four prime contractors.

We held, however, in *Suburban Paving Co. Inc. v. Bo-Man Associates, Inc.,* 292 Minn. 332, 195 N.W.2d 816 (1972), that a similar provision in a construction subcontract was not so plain and unambiguous as to preclude evidence of custom which would aid in its interpretation. The appellant in that case claimed error by the trial court's admission of evidence of custom and usage to contradict an allegedly plain and unambiguous provision in the construction contract. We stated that the provision in question was susceptible of several meanings.

■ Where a usage is determinative of the meaning of the terms of a contract, arbitrators may determine what that usage is in a dispute rising under the contract. *Park Construction Co. v. Independent School District,* 216 Minn. 27, 11 N.W.2d 649 (1943).

Section 4.3.1, relied on by the School District in the instant case, was not so clear and unambiguous as to have precluded the introduction of evidence of custom and usage for clarification of its meaning. It would be contrary to common sense and reasonableness to assume that one who has hired four prime contractors under four separate contracts could completely absolve itself of all responsibility for coordination of their efforts. Thus, the Tribunal properly admitted evidence of custom and usage to aid in the interpretation of this section.[1]

Since there was no mistake by the Tribunal in the application of its own theory, rule, or formula regarding the case, and since there is no evidence of fraud, misconduct, or disregard of duty, the awards in the instant case were properly affirmed in all respects by the trial court.

Affirmed.

1. The School District also raises the question of the Tribunal's equal division of the arbitration fees and expenses among the five parties to the arbitration proceedings. Since the Tribunal found the School District should not be fully indemnified by Carlstrom because of its partial responsibility for the damages to Hoffman, Midwest, and Tessier, it was proper for the Tribunal to apportion the arbitration fees and expenses rather than to charge Carlstrom with all those fees and expenses incurred by the School District.