**LITTFIN LUMBER COMPANY, Appellant,**

v.

**Jeanne FASCHING, as personal representative of the Estate of Stanley B. Fasching, decedent, Respondent.**

**No. CX–88–1822.**

Court of Appeals of Minnesota.

March 7, 1989.
Review Granted May 24, 1989.

Michael M. Gavin, Gavin, Olson, Conkel & Savre, Ltd., Glencoe, for appellant.

William P. Luther, Robert H. Torgerson, Luther, Ballenthin & Carruthers, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE,* JJ.

## OPINION

FOLEY, Judge.

Littfin Lumber Company (the company) appeals from a judgment confirming in part and vacating in part an arbitrator's award. We reverse and direct the trial court to enter judgment confirming the arbitrator's award as finally amended and corrected.

## FACTS

On October 26, 1979, the company and shareholders Stanley B. Fasching and John

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

A. Littfin entered into a stock transfer agreement. This agreement provided for the transfer and purchase of a deceased shareholder's stock by the company; for the determination of the purchase price to be paid for the stock, including a formula for calculating the price; and for the assignment of life insurance policies owned by the deceased shareholder to the surviving shareholder.

The stock transfer agreement also provided for arbitration of disputes. The arbitration clause states:

> In the event of any dispute under this Agreement not otherwise provided for, or in the event of any dispute between appraisers and/or arbitrators who may have been appointed hereunder, such dispute shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof. Any costs of such proceedings shall be borne by the purchasing party or parties.

Stanley Fasching died on April 5, 1985. At the time of his death, he had a 10% ownership interest in the company. The company had previously purchased and paid premiums on insurance policies on the lives of Fasching and Littfin, naming them as owners of the policies.

The company initially tendered an offer to respondent Jeanne Fasching, as personal representative of the Estate of Stanley B. Fasching, to purchase his ownership interest. She rejected the offer, contending that the company based its buy-out price on mistakenly uncorrected formula language in the stock transfer agreement. The company then brought a declaratory judgment action in the district court to determine the stock redemption price.

On May 26, 1986, the district court issued an order determining that arbitration was the proper forum for the settlement of the dispute between the parties. On August 19, 1987, the arbitrator issued an award establishing the value of the stock and setting the interest rate on the stock payment at 6%. The arbitrator ordered Littfin's life insurance policy be assigned to the company and to Littfin, and the company was directed to pay Jeanne Fasching $6,500 in attorney fees and witness expenses.

Fasching then applied for modification or correction of the arbitrator's award. A corrected award was issued September 25, 1987, which set the interest rate on the stock payment at 6.67%. In all other respects the original award remained unchanged. Thereafter, Fasching requested further modifications and corrections, and the arbitrator issued an amended award on November 13, 1987. The amended award directed the company to pay Fasching the value of her deceased husband's stock in accordance with the provisions of the stock transfer agreement, except that the total sum of money was to be paid in cash. No other changes were made in the original and corrected awards.

Subsequently, the company brought a motion in district court to confirm the arbitrator's award. Fasching moved to vacate or deny confirmation of the award, or in the alternative, to modify or correct the award. The district court issued findings of fact and conclusions of law on February 24, 1988. Thereafter, both parties made post-trial motions for amended findings and conclusions.

Those motions led the district court to suggest that the parties enter into a stipulation authorizing that court to review and render a final determination on the merits of three issues. The three issues to be reviewed were:

> 1. whether the plaintiff [Littfin Lumber Company] must pay consideration with respect to any transfer of ownership on the policy insuring the life of John A. Littfin, Northwestern Mutual Life insurance policy no. 7–526–797;
>
> 2. whether the stock payments made by plaintiff to defendant [Jeanne Fasching] should be paid through one lump sum or through installment payments;
>
> 3. what particular rate of interest is due and owing on any stock payment(s).

The stipulation provided as follows:

> IT IS HEREBY STIPULATED AND AGREED by and between the parties

hereto and through their respective counsel that, upon execution of this document, this Court has the authority, regardless of what the parties' respective intentions regarding arbitrability may have been, to render a final decision on the merits of the three issues outlined above; and further, that any party aggrieved by this Court's final decision will be estopped from arguing on appeal that these issues were not properly before the Court because arbitration was the proper forum for any of these issues.

The stipulation was entered into in June 1988, and thereafter the district court issued amended findings of fact and conclusions of law. The judgment entered on July 25, 1988 vacated in part and modified or corrected in part the arbitrator's award. The company now appeals from that judgment.

### ISSUE

Did the trial court judgment improperly alter the arbitrator's award?

### ANALYSIS

The language of the arbitration agreement determines whether the parties intended to arbitrate a particular issue. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). Here, the arbitration clause of the stock transfer agreement provides that any dispute under that agreement not otherwise provided for may be settled by arbitration.

Fasching's demand for arbitration dated September 4, 1986, requests arbitration on the issue of the "redemption and valuation of corporate stock upon the death of a shareholder." The provisions of Article IV of the stock transfer agreement cover transfers upon death; paragraph I.A of that article provides for the purchase and sale of the deceased shareholder's stock. This particular dispute arises under the stock transfer agreement and is clearly within the scope of the arbitration clause.

The arbitrator also addressed the issue of the transfer of the life insurance policy on John Littfin. We cannot ignore a stipulation on this issue entered into by the parties at the arbitration proceeding:

MR. GAVIN [appellant's counsel]: I understand that one of the issues that we have anticipated in this proceeding can be resolved by stipulation, and perhaps for purposes of speeding up the process that we would, I would ask that we place the stipulation on the record.

That issue is the transfer of the life insurance policies insuring the life of John A. Littfin. I understand further there are two such policies issued by the Northwestern Mutual Life Insurance Companies. They are policy numbers 7520873 and 7546797, both issued on January 16, 1978. The owner of those policies—the owner of those policies would now be the estate of Stanley B. Fasching. I understand from talking to Mr. Luther [respondent's counsel] this morning that the estate is willing to transfer, assign the ownership of those policies pursuant to the stock transfer agreement of October 26, 1979 to the insured John A. Littfin and that they are not claiming any such interests in the policies, that they would not be receiving any consideration, as there can be no cash value as of the date of death of Stanley B. Fasching on April 5th, 1985.

ARBITRATOR: Is that your belief?

MR. LUTHER: Your Honor, we would agree that as part of the final arbitration award in this matter that those policies could be transferred to Mr. John Littfin as part of that final award and we would not object to that as being a part of the final award in this matter.

We conclude this issue also was properly before the arbitrator.

In the absence of any agreement limiting the arbitrator's authority, the arbitrator is the final judge of law and fact, including the interpretation of the terms of a contract, unless there is fraud, misconduct, mistake in applying his own theory, or disregard of duty. *Eric A. Carlstrom Construction Co. v. Independent School District No. 77*, 256 N.W.2d 479, 483 (Minn. 1977). A narrow standard is used in reviewing arbitration awards:

"The arbitrators make the final determinations of all questions submitted to them whether legal or factual. The court will not overturn these conclusions even if it believes the arbitrators made an incorrect conclusion. If arbitrators' decisions were subject to reconsideration by the courts, arbitration proceedings would work merely to delay final decisions of controversies rather than bring them to speedy resolution."

*Id.* (quoting *Grudem Brothers Co. v. Great Western Piping Corp.*, 297 Minn. 313, 316, 213 N.W.2d 920, 922 (1973)).

■ When the arbitrator's award draws its essence from the parties' agreement, the award will not be disturbed if " 'the interpretation can in some rational manner be derived from the agreement,' " considering its language, context and other indications of the parties' intentions. *Ramsey County v. American Federation of State, County & Municipal Employees, Council 91, Local 8*, 309 N.W.2d 785, 792 (Minn. 1981) (quoting *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union, Local 7–1 Inc.*, 548 F.2d 1288 (7th Cir.1977), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977)). The issues resolved by the arbitrator here clearly arose from the stock transfer agreement. Evidence was submitted and testimony was taken by the arbitrator. Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as this award complies with the standards to be applied by the reviewing court in exercising its limited function. *Id.* When arbitrability has been established, "the role of the judiciary does not encompass a re-examination on the merits." *Id.* at 790. Here, the trial judge had no authority sua sponte to change the arbitrator's decision. We find that the trial court improperly vacated the arbitrator's award.

■ Fasching also raises the issue of mutual mistake and contends that the stock price formula in the agreement should be reformed to conform with the parties' true intentions. At no time during Stanley Fasching's lifetime was any effort made to reform the agreement. By Jeanne Fasching's own answer and counterclaim, she has submitted the crucial issues for arbitration. Fasching took no proper steps to preserve these issues for review and remove them from arbitration. The theory of mutual mistake was submitted during the arbitration proceedings and a decision was made by the arbitrator. The arbitrator did not exceed his powers in finding the stock valuation dispute and the question of mutual mistake to be arbitrable.

■ Finally, we consider the June 1988 stipulation recommended by the trial court and adopted by the attorneys to be a nullity and of no legal effect. Furthermore, it is beyond the scope of review contemplated by statute and case law. There is no authority of which we are aware that would permit the trial court to change the standard of review and thus change the award and authority of the arbitrator. In reaching decision here, we have considered Fasching's motion to limit issues on appeal. This opinion addresses the matters raised therein. The request for costs and attorney fees is denied.

## DECISION

The trial court judgment is reversed, and the trial court is directed to enter judgment confirming the arbitrator's award as finally amended and corrected.

**REVERSED.**

FORSBERG, Judge (dissenting):

I respectfully dissent. If the parties can agree to arbitration, it would seem that they can waive arbitration and submit the issues to the court for determination, which is precisely what they did.