**INDEPENDENT SCHOOL DISTRICT NO. 279, Petitioner, Respondent,**

v.

**WINKELMAN BUILDING CORP., Appellant.**

No. C4–94–1694.

Court of Appeals of Minnesota.

May 2, 1995.

Stephen M. Knutson, John J. O'Donnell, Michelle D. Kenney, Knutson, Flynn, Hetland, Deans & Olsen, St. Paul, for petitioner, respondent.

Edward J. Laubach, Jr., Thomas P. Melloy, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for appellant.

Considered and decided by HARTEN, P.J., and HUSPENI and MANSUR *, JJ.

## OPINION

HUSPENI, Judge.

Appellant, a general contractor, filed a demand for arbitration claiming that respondent, a school district, owed it $25,000 remaining on a construction contract. The arbitrator awarded respondent $20,000 and appellant $5,000, respectively, from the escrow account and found that respondent had waived any other affirmative setoff or counterclaim against appellant. Upon respondent's motion, the district court concluded

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

that the arbitrator had exceeded his authority and vacated the portion of the arbitrator's decision holding that respondent had waived its right to assert further setoff or counterclaims. Because we conclude that the arbitrator did not exceed his authority, we reverse.

## FACTS

This dispute arises out of a 1990 contract between appellant Winkelman Building Corporation and respondent Independent School District Number 279 for the construction of Weaver Lake Elementary School. The agreement provided in relevant part:

4.5.1. Controversies and Claims Subject to Arbitration. Any controversy or claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association * * *.

* * * * * *

4.5.2 Rules and Notices for Arbitration. Claims between the Owner and Contractor not resolved under paragraph 4.4 shall, if subject to arbitration under Subparagraph 4.5.1, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise.

Subparagraph 4.5.2 was amended to include:

Prearbitration discovery shall be conducted in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure.

In September 1992, while construction was still underway, respondent first noticed cracks in the mortar of the building. Consequently, architects for the project inspected the building and found significant masonry distress. Respondent then retained American Engineering Testing (AET) to inspect the mortar. In a November 1992 report, AET stated that the extent of the masonry distress could not be fully ascertained at that time due to the nature of the deterioration. Therefore, the parties agreed to have AET conduct tests on the building beginning in July 1993.

On July 6, 1993, before AET had issued its report, appellant filed a demand for arbitration, stating in part:

Nature of Dispute: Claimant was the general contractor for the construction of the Weaver Lake School. Although the project was completed and occupied on or before September 1991, there remains owing to Claimant the principal sum of approximately $25,000 plus interest, costs, disbursements and attorneys fees.

Claim or Relief Sought: (amount, if any) Approximately $25,000 plus interest, costs, disbursements and attorneys fees.

On July 13, 1993, the American Arbitration Association sent respondent notice that if respondent chose to do so, respondent must file an answer by July 23, 1993. Respondent did not file an answer or counterclaim.

On July 23, 1993, the day respondent's answer in the arbitration proceeding was due, AET issued a report indicating that the cause of the masonry problem was appellant's failure to comply with the masonry specifications. Respondent received this report on or about July 27, 1993. The building continued to deteriorate and further tests were performed to determine the cost of restoration. In March 1994, the MacPherson–Towne Company issued a report estimating that the cost of restoration would be $175,000.

In December 1993, the arbitrator awarded respondent $20,000 and appellant $5,000, respectively, from the escrow account, and found that respondent "has waived any other affirmative setoff or counterclaim against [appellant]." Respondent did not challenge the $20,000 awarded to it, nor the $5,000 awarded to appellant, but did seek to vacate the portion of the arbitrator's award that determined respondent had waived its right to assert further setoff or counterclaims. The district court granted respondent's motion, finding that the arbitrator exceeded the scope of his authority because the parties intended to arbitrate only whether the $25,000 should remain in escrow and did not intend to arbitrate the issue of damages. The district court also found that neither the Construction Industry Arbitration Rules, nor

the parties' agreement, nor the Federal Rules of Civil Procedure mandated that respondent file a counterclaim.[1]

## ISSUES

1. Did the district court err by finding that the arbitrator exceeded the scope of his authority?

2. Was there a compulsory counterclaim?

## ANALYSIS

Arbitration is a proceeding favored in law. *Ehlert v. Western Nat'l Mut. Ins. Co.*, 296 Minn. 195, 199, 207 N.W.2d 334, 336 (1973). The primary intent of arbitration is to encourage voluntary resolution of disputes in a forum created and controlled by the parties in their written agreement, and to discourage litigation. *Eric A. Carlstrom Constr. Co. v. Independent Sch. Dist. No. 77*, 256 N.W.2d 479, 483 (Minn.1977).

Upon application of a party, a district court shall vacate an arbitration award when the arbitrator exceeded his or her power. Minn.Stat. § 572.19, subd. 1(3) (1992). The scope of the arbitrator's power is determined by the intent of the parties. *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 420 (Minn.1988). "The issue of arbitrability is to be determined by ascertaining the intention of the parties through examination of the language of the arbitration agreement." *Michael–Curry Co. v. Knutson Shareholders Liquidating Trust*, 449 N.W.2d 139, 141 (Minn.1989). This court's review of a district court's interpretation of an arbitration agreement is de novo. *Id.*

"Once arbitrability is established, the standard of review narrows sharply." *Morrison v. Northern States Power Co.*, 491 N.W.2d 675, 678 (Minn.App.1992), *pet. for rev. denied* (Minn. Jan. 15, 1993).

[A]n arbitrator, in the absence of an agreement limiting his authority, is the final judge of both law and fact, * * * and his award will not be reviewed or set aside for mistake of either law or fact in the absence

of fraud, mistake in applying his own theory, misconduct, or other disregard of duty.

\* \* \* \* \* \*

[O]nly when it is established that arbitrators have clearly exceeded their powers must a court vacate an arbitration award. Every reasonable presumption must be exercised in favor of the finality and validity of the arbitration award, and courts will not overturn an award merely because they disagree with the arbitrator's decision on the merits.

\* \* \* \* \* \*

In evaluating challenges to the scope of an arbitrator's powers, this court's scope of review is very limited:

The scope of the arbitrator's powers is a matter of contract to be determined from a reading of the parties' arbitration agreement, and an arbitrators' award will be set aside by the courts only when the objecting party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them in the arbitration agreement; courts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits.

*State Auditor v. Minn. Ass'n of Professional Employees*, 504 N.W.2d 751, 754–55 (Minn. 1993) (citations and quotations omitted) (emphasis in original).

"The supreme court has consistently emphasized the finality of arbitration." *Kersting v. Royal–Milbank Ins.*, 456 N.W.2d 270, 274 (Minn.App.1990). *See Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn. 1990) ("We \* \* \* have afforded to an arbitration award finality as to both facts and the law"); *Park Const. Co. v. Independent Sch. Dist. No. 32*, 216 Minn. 27, 33, 11 N.W.2d 649, 652 (1943) ("[f]inality of decision is one of the objects of arbitration").

Further, the arbitration act provides that the fact that the [arbitrator's] relief was such that it could not or would not be granted by a court of law or equity is not

---

**1.** The district court order vacating part of the arbitrator's award does not direct a rehearing.

Therefore, it is appealable under Minn.Stat. § 572.26, subd. 1(5) (1992).

ground for vacating or refusing to confirm the award.

Minn.Stat. § 572.19, subd. 1 (1992). *See Johnson v. American Family Mutual Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988) ("a court will not even set aside an arbitration award because it thinks the arbitrators erred as to the law or facts, as long as the reasoning and judgment are consistent"); *Lucas v. American Family Mut. Ins. Co.*, 403 N.W.2d 646, 649 (Minn.1987) ("no statutory or case law authority exists giving the district court jurisdiction to vacate an award because the arbitrator(s) made an error of law").

## I. Did the arbitrator exceed his authority?

█ In determining that the arbitrator exceeded the scope of his authority by making findings on matters not before him, and in vacating the arbitrator's provision that respondent had waived its right to assert further setoffs or counterclaims against appellant, the district court stated:

> [T]he parties intended to arbitrate only one issue: Whether or not the $25,000 retainage would remain in escrow. * * * This issue involved a determination of the cause of the masonry distress, i.e. who was liable. It did not, however, involve a determination of the extent of the necessary remedial action; i.e. the amount of damages.

Our review of the record convinces us that the issue of damages *was* before the arbitrator, that he did not make findings on a matter not before him and, therefore, that he did not exceed his authority. We note initially that respondent did not challenge in the district court, nor does it challenge here, the allocation of the $25,000 retainage in the amount of $20,000 to respondent and $5,000 to appellant. That allocation, however, can be interpreted only as a resolution of a damage claim. Damages clearly were addressed and resolved by the arbitrator. Thus, by not challenging the allocation of the $25,000 retainage, respondent seeks, in effect, to bifur-

cate the arbitrator's resolution of the damage issue rather than to have this court declare that the arbitrator exceeded his authority in addressing the issue at all.

█ Respondent, by its action in this case, demonstrates a willingness to accept the $20,000, but objects to being foreclosed from pursuing additional damages. While we are not indifferent to respondent's arguments, which claim actual damages far in excess of $20,000, we are mindful of the very limited standard of review permitted courts when addressing arbitration awards. The arbitrator is the final judge of both the law and fact in matters properly submitted for arbitration and an arbitration award cannot be vacated, even though a mistake of law or fact may have been made. *Morrison*, 491 N.W.2d at 678.

Our conclusion that the issue of damages was submitted to the arbitrator, and that the arbitrator did not exceed his authority, is also supported by respondent's own arguments. In resisting appellant's request that no evidence be taken regarding the condition of the brickwork, respondent submitted the testimony of three expert witnesses on the cause of masonry distress during the arbitration hearing. Respondent maintained throughout the arbitration process that retainage should not be released to appellant because appellant's failure to comply with contract specifications was the cause of the masonry distress. While respondent's challenge to the arbitration award was based upon the alleged distinction between liability (determination of which respondent acknowledges was within the arbitrator's authority) and damages (determination of which respondent argues was, at least in part, not within the authority of the arbitrator), we are unable under the facts of this case to discern any intent on the part of the parties to arbitrate liability but not damages.

## II. Was the counterclaim compulsory?

█ The Construction Industry Arbitration (CIA) rules do not mandate a counterclaim in most circumstances.[2] However, un-

2. CIA Rule 6 provides that the responding party "may file an answering statement" and "[i]f a counterclaim is asserted" it should set "forth the nature of the counterclaim." Further, "[i]f no answering statement is filed within the stated time, it will be treated as a denial of the claim." *Id.* CIA Rule 8, titled "Changes of Claims," states: "After filing of a claim, if either party

der the specific facts of this case, including respondent's failure to resist arbitration or seek a continuance, we deem respondent's counterclaim to be mandatory.

In partially vacating the arbitration award, the district court determined that any counterclaim respondent may have had regarding the extent of masonry damage or the need for remedial action was not a compulsory counterclaim. To the extent that the district court's determination of no compulsory counterclaim rested on a conclusion that damages were beyond the scope of arbitrability and authority of the arbitrator, and therefore that arbitration did not involve any counterclaim issue, that determination is flawed. The parties did submit the question of damages to the arbitrator. The parties' acquiescence before the district court and before this court to the $20,000/$5,000 allocation of the retainage is stark evidence of that submission.

■ To the extent that the district court determined there was no compulsory counterclaim because any such claim was not mature, we can conclude only that such non-matured status would have been asserted most appropriately through respondent's resistance to arbitration or respondent's request for a continuance until damages to the masonry could be determined with specificity. Respondent neither resisted appellant's request for arbitration nor sought a continuance. Instead, respondent submitted to arbitration and acquiesced in the arbitrator's decisions and allocation of retainage. Respondent wishes, however, to be permitted to seek additional arbitration in the future regarding damages that exceed $20,000. Such additional arbitration proceedings would, we believe, contravene one of the overarching principles of arbitration: to bring about the speedy and efficient resolution of disputes. *Eric A. Carlstrom,* 256 N.W.2d at 483.

We conclude, therefore, that respondent, finding itself a party to an arbitration proceeding in which the question of damages was presented to the arbitrator, had a duty to resist arbitration, to seek a continuance, or to file a counterclaim. Because respondent

failed to take any of these actions, respondent's assertion that the arbitrator exceeded his authority by determining that respondent waived any right to further setoffs or counterclaims also must fail.

## DECISION

The arbitrator did not exceed his authority by finding that respondent waived any other affirmative setoff or counterclaim against appellant, even though it may have been impossible to ascertain total damages at the time of arbitration, because respondent failed to request a continuance or otherwise object to the arbitration. We reverse the district court's order vacating in part the arbitrator's award and reinstate the award in its entirety.

**Reversed.**

desires to make any new or different claim or counterclaim * * *."